Martha J. COPLEY, Plaintiff-Appellant,

v.

Elliot RICHARDSON, Secretary, Health, Education and Welfare, Defendant-Appellee.

No. 72-1704.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1973.

Decided March 20, 1973.

Richard Carter Irvin, Columbus, Ohio, for plaintiff-appellant; Roy F. Martin, Donna Christy Baker, Legal Aid & Defender Society, Columbus, Ohio, on brief.

Grayce Ruehlman, Asst. U. S. Atty., Cincinnati, Ohio, for defendant-appellee; William W. Milligan, U. S. Atty., W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, on brief.

Before EDWARDS, KENT and LIVELY, Circuit Judges.

PER CURIAM.

Plaintiff-appellant appeals from an order entered by a District Judge affirming the Secretary of Health, Education and Welfare's denial of child benefits under § 202(d)(1)(B) of the Social Security Act, 42 U.S.C. § 402(d) (1)(B) (1970), which provides benefits for a child (of an insured person) who is under a disability which began before the child attained the age of 18.

The Hearing Examiner, whose findings of fact were accepted by the appeals counsel and by the District Judge, summarized the disability record as follows:

> The record shows that this claimant has had at least eight periods of hospitalization. She was first hospitalized for a period of six months in 1941, and, thereafter, was hospitalized from January to June 1942; for a period of time in 1947; for some time in 1956; from May to August 1959; from December 1960 to April 1963; from August to December 1968; and from May to October 1969. The diagnosis submitted by the Columbus State Hospital in December 1969 was chronic brain syndrome, non psychotic organic brain syndrome with epilepsy. The hospital record shows that she was subject to depression and suicidal ideas, and that she was prone to outbursts of temper and hostility.

> The Hearing Examiner wishes to state, at this point, that this claimant has a significant problem, which had its onset prior to age 18.

Subsequent thereto, however, the Hearing Examiner found that over a period of seven years appellant had demonstrated "an ability to perform substantial gainful activity" by working part-time at a restaurant and by working as a part-time maid at the home of her employer "for all of which she is paid at the rate of $1.25 an hour and earns approximately $30 a week."

These findings we hold to be unsupported by substantial evidence in this record. We note that appellant appeared alone before the Hearing Examiner, without benefit of legal counsel, and responded to questions which called for a description of the sorts of work she performed and the hourly rate she was paid therefor. The Hearing Examiner, however, made no inquiry as to her weekly, monthly, or yearly earnings, or

the impact upon her earnings of the repeated periods of hospitalization, or the impact upon her employment of her seizures, depression, suicidal ideas and attempts, and outbursts of temper and hostility.

█ The concepts of justice and equality upon which this nation is founded do not suggest that a quasi-judicial officer of this government should undertake to employ expert questioning to write a record exclusively favorable to the government's side of the case when he is on notice that the claimant for social security benefits is totally alone, mentally ill, and unrepresented by legal counsel. Particularly is this true when, as here, the hearing officer is also on notice that there are facts strongly favorable to her claim which he has not seen fit fully to explore.

The employment relied upon by the Hearing Examiner as evidence of claimant's capacity for substantial gainful activity is clearly one where the employer would be required to file Social Security earning reports. Under these circumstances, we believe that Exhibit 9, which the Hearing Examiner had introduced in this record, takes on added significance. This Social Security "earnings certificate" shows that appellant earned a total of $1,943.58 between the years 1936 and 1969. In many of these years the report shows no earnings at all. It shows 1967 to have been claimant's highest year of earnings, with $822. The next highest year was 16 years earlier, in the year 1951, when she earned $296.77.

Section 6403 of the Claims Manual of the Social Security Administration deals with substantial gainful activity (SGA). Subsection 6403(c), entitled "earnings of less than $90 per month," reads:

Where average monthly earnings are less than $90 a month, an assumption may be made that the work is not SGA in the absence of evidence to the contrary. This assumption may be made for both sheltered and nonsheltered employment.

We believe that the administrative record in this case, taken as a whole, demonstrates a lack of substantial evidence to support the findings of fact of the Secretary and impels a reversal and remand for the award of disability benefits.

Although not essential to that conclusion, the following questions and answers between the Hearing Examiner and the claimant help to illustrate the nature and extent of the underlying disability:

Q: Well now, Miss Copley, assume that you were offered full time employment as a domestic instead of working part time, what would be your difficulty?

A: Well, my main difficulty is my education in getting any regular work.

Q: I'm talking about work as a domestic employee like your're doing now, except on a full time basis.

A: Well, people won't hire me when they find out I'm an epileptic. You mention epileptic and they won't hire you 'cause they are afraid of you, 'cause I have a grand-mal kind of epilepsy and I pass out and foam at the mouth and jerk, and I don't remember. I sometimes come out fighting.

Q: Do you still have these epileptic seizures?

A: Oh yes.

Q: How often do you have them?

A: Now, I've only had two in four years, but that's because the state hospital changed my medicine.

Q: So it's pretty well controlled?

A: It's getting that way but the doctor thinks that I'm in the change of life, but they think that I might go mentally insane by the time I go through the change of life.

Q: Is this what they told you?

A: Uh huh, if I didn't keep active, and since my family won't have nothing to do with me, I raise birds.

Q: Why won't your family have anything to do with you?

A: Well, they have been ashamed of me all my life. I've had one brother tried to choke me twice.

Q: What kind of birds do you raise?

A: I've got a canary, paul parrot, finch, and a parakeet.

Q: You like raising birds?

A: Yes.

Q: Do you train them?

A: No, I just feed them and just love to hear them holler, because I don't have anyone to talk to, and in the summer I'd take out walks in the woods, just to see the animals because people won't have nothing to do with me.

The judgment of the District Court is reversed. The case is remanded to the District Court for the entry of an order awarding disability benefits claimed in this proceeding.