HECKLER, SECRETARY OF HEALTH AND HUMAN
SERVICES *v.* CAMPBELL

No. 81–1983.   Argued February 28, 1983—Decided May 16, 1983

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, White, Blackmun, Rehnquist, Stevens, and O'Connor, JJ., joined. Brennan, J., filed a concurring opinion, *post*, p. 470. Marshall, J., filed an opinion concurring in part and dissenting in part, *post*, p. 473.

*John H. Garvey* argued the cause for petitioner. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller,* and *Anne Buxton Sobol.*

*Ruben Nazario* argued the cause for respondent. With him on the brief were *Toby Golick* and *Jane Greengold Stevens.**

Justice Powell delivered the opinion of the Court.

The issue is whether the Secretary of Health and Human Services may rely on published medical-vocational guidelines to determine a claimant's right to Social Security disability benefits.

I

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's abil-

---

*Briefs of *amici curiae* urging affirmance were filed by *Eileen P. Sweeney* for the Gray Panthers; and by *Dan Stormer* for Tulare/Kings Counties Legal Services et al.

ity to function in the workplace. It provides disability benefits only to persons who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 81 Stat. 868, as amended, 42 U. S. C. § 423(d)(1)(A). And it specifies that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U. S. C. § 423(d)(2)(A).

In 1978, the Secretary of Health and Human Services promulgated regulations implementing this definition. See 43 Fed. Reg. 55349 (1978) (codified, as amended, at 20 CFR pt. 404, subpt. P (1982)). The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work. See 20 CFR § 404.1520(d) (1982) (referring to impairments listed at 20 CFR pt. 404, subpt. P, app. 1). A claimant who establishes that he suffers from one of these impairments will be considered disabled without further inquiry. *Ibid.* If a claimant suffers from a less severe impairment, the Secretary must determine whether the claimant retains the ability to perform either his former work or some less demanding employment. If a claimant can pursue his former occupation, he is not entitled to disability benefits. See § 404.1520(e). If he cannot, the Secretary must determine whether the claimant retains the capacity to pursue less demanding work. See § 404.1520(f)(1).

The regulations divide this last inquiry into two stages. First, the Secretary must assess each claimant's present job qualifications. The regulations direct the Secretary to consider the factors Congress has identified as relevant: physical ability, age, education, and work experience.[1] See 42

---

[1] The regulations state that the Secretary will inquire into each of these factors and make an individual assessment of each claimant's abilities

U. S. C. § 423(d)(2)(A); 20 CFR § 404.1520(f) (1982). Second, she must consider whether jobs exist in the national economy that a person having the claimant's qualifications could perform. 20 CFR §§ 404.1520(f), 404.1566–404.1569 (1982).

Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy. After a claimant's limitations and abilities had been determined at a hearing, a vocational expert ordinarily would testify whether work existed that the claimant could perform. Although this testimony often was based on standardized guides, see 43 Fed. Reg. 9286 (1978), vocational experts frequently were criticized for their inconsistent treatment of similarly situated claimants. See *Santise* v. *Schweiker*, 676 F. 2d 925, 930 (CA3 1982); J. Mashaw, C. Goetz, F. Goodman, W. Schwartz, P. Verkuil, & M. Carrow, Social Security Hearings and Appeals 78–79 (1978). To improve both the uniformity and efficiency[2] of this determination, the Secretary promulgated medical-vocational guidelines as part of the 1978 regulations. See 20 CFR pt. 404, subpt. P, app. 2 (1982).

These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Con-

---

and limitations. See 20 CFR §§ 404.1545–404.1565 (1982); cf. 20 CFR § 404.944 (1982). In determining a person's physical ability, she will consider, for example, the extent to which his capacity for performing tasks such as lifting objects or his ability to stand for long periods of time has been impaired. See § 404.1545.

[2] The Social Security hearing system is "probably the largest adjudicative agency in the western world." J. Mashaw, C. Goetz, F. Goodman, W. Schwartz, P. Verkuil, & M. Carrow, Social Security Hearings and Appeals xi (1978). Approximately 2.3 million claims for disability benefits were filed in fiscal year 1981. Department of Health and Human Services, Social Security Annual Report to the Congress for Fiscal Year 1981, pp. 32, 35 (1982). More than a quarter of a million of these claims required a hearing before an administrative law judge. *Id.*, at 38. The need for efficiency is self-evident.

gress—physical ability, age, education, and work experience [3]—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. [4]  Where a claimant's qualifications correspond to the job requirements identified by a rule, [5] the guidelines direct a conclusion as to whether work exists that the claimant could perform.  If such work exists, the claimant is not considered disabled.

## II

In 1979, Carmen Campbell applied for disability benefits because a back condition and hypertension prevented her from continuing her work as a hotel maid.  After her application was denied, she requested a hearing *de novo* before an Administrative Law Judge. [6]  He determined that her back

---

[3] Each of these four factors is divided into defined categories.  A person's ability to perform physical tasks, for example, is categorized according to the physical exertion requirements necessary to perform varying classes of jobs—*i. e.*, whether a claimant can perform sedentary, light, medium, heavy, or very heavy work.  20 CFR § 404.1567 (1982).  Each of these work categories is defined in terms of the physical demands it places on a worker, such as the weight of objects he must lift and whether extensive movement or use of arm and leg controls is required.  *Ibid.*

[4] For example, Rule 202.10 provides that a significant number of jobs exist for a person who can perform light work, is closely approaching advanced age, has a limited education but who is literate and can communicate in English, and whose previous work has been unskilled.

[5] The regulations recognize that the rules only describe "major functional and vocational patterns."  20 CFR pt. 404, subpt. P, app. 2, § 200.00(a) (1982).  If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered.  See app. 2, §§ 200.00(a), (d).  Additionally, the regulations declare that the administrative law judge will not apply the age categories "mechanically in a borderline situation," 20 CFR § 404.1563(a) (1982), and recognize that some claimants may possess limitations that are not factored into the guidelines, see app. 2, § 200.00(e).  Thus, the regulations provide that the rules will be applied only when they describe a claimant's abilities and limitations accurately.

[6] The Social Security Act provides each claimant with a right to a *de novo* hearing.  42 U. S. C. § 405(b) (1976 ed., Supp. V); § 421(d).  The regula-

problem was not severe enough to find her disabled without further inquiry, and accordingly considered whether she retained the ability to perform either her past work or some less strenuous job. App. to Pet. for Cert. 28a. He concluded that even though Campbell's back condition prevented her from returning to her work as a maid, she retained the physical capacity to do light work. *Ibid.* In accordance with the regulations, he found that Campbell was 52 years old, that her previous employment consisted of unskilled jobs, and that she had a limited education. *Id.*, at 28a–29a. He noted that Campbell, who had been born in Panama, experienced difficulty in speaking and writing English. She was able, however, to understand and read English fairly well. App. 42. Relying on the medical-vocational guidelines, the Administrative Law Judge found that a significant number of jobs existed that a person of Campbell's qualifications could perform. Accordingly, he concluded that she was not disabled.[7] App. to Pet. for Cert. 29a.

This determination was upheld by both the Social Security Appeals Council, *id.*, at 16a, and the District Court for the Eastern District of New York, *id.*, at 15a. The Court of Appeals for the Second Circuit reversed. *Campbell v. Secretary of Dept. of Health and Human Services*, 665 F. 2d 48 (1981). It accepted the Administrative Law Judge's determination that Campbell retained the ability to do light work. And it did not suggest that he had classified Campbell's age,

---

tions specify when a claimant may exercise this right. See 20 CFR §§ 404.929–404.930 (1982).

[7] The Administrative Law Judge did not accept Campbell's claim that her hypertension constituted an impairment. He found that this claim was not documented by the record and noted that her current medication appeared sufficient to keep her blood pressure under control. See App. to Pet. for Cert. 27a.

Campbell later reapplied for disability benefits and was found disabled as of January 1, 1981. See Brief for Petitioner 8, n. 7. The Secretary's subsequent decision does not moot this case since Campbell is claiming entitlement to benefits prior to January 1, 1981.

education, or work experience incorrectly. The court noted, however, that it

> "has consistently required that 'the Secretary identify specific alternative occupations available in the national economy that would be suitable for the claimant' and that 'these jobs be supported by "a job description clarifying the nature of the job, [and] demonstrating that the job does not require" exertion or skills not possessed by the claimant.'" *Id.*, at 53 (quoting *Decker* v. *Harris*, 647 F. 2d 291, 298 (CA2 1981)).

The court found that the medical-vocational guidelines did not provide the specific evidence that it previously had required. It explained that in the absence of such a showing, "the claimant is deprived of any real chance to present evidence showing that she cannot in fact perform the types of jobs that are administratively noticed by the guidelines." 665 F. 2d, at 53. The court concluded that because the Secretary had failed to introduce evidence that specific alternative jobs existed, the determination that Campbell was not disabled was not supported by substantial evidence. *Id.*, at 54.

We granted certiorari to resolve a conflict among the Courts of Appeals.[8] *Schweiker* v. *Campbell*, 457 U. S. 1131 (1982). We now reverse.

---

[8] Every other Court of Appeals addressing the question has upheld the Secretary's use of the guidelines. See *Rivers* v. *Schweiker*, 684 F. 2d 1144, 1157–1158 (CA5 1982); *McCoy* v. *Schweiker*, 683 F. 2d 1138, 1144–1146 (CA8 1982); *Torres* v. *Secretary of Health and Human Services*, 677 F. 2d 167, 169 (CA1 1982); *Santise* v. *Schweiker*, 676 F. 2d 925, 934–936 (CA3 1982); *Cummins* v. *Schweiker*, 670 F. 2d 81, 82–83 (CA7 1982); *Kirk* v. *Secretary of Health and Human Services*, 667 F. 2d 524, 529- 535 (CA6 1981); *Frady* v. *Harris*, 646 F. 2d 143, 145 (CA4 1981). One Court of Appeals has agreed that the Secretary may use medical-vocational guidelines but has found that with respect to age the guidelines are arbitrary. See *Broz* v. *Schweiker*, 677 F. 2d 1351, 1359–1361 (CA11 1982), cert. pending, No. 82–816. The instant case does not present the issue addressed in *Broz*.

## III

The Secretary argues that the Court of Appeals' holding effectively prevents the use of the medical-vocational guidelines. By requiring her to identify specific alternative jobs in every disability hearing, the court has rendered the guidelines useless. An examination of both the language of the Social Security Act and its legislative history clearly demonstrates that the Secretary may proceed by regulation to determine whether substantial gainful work exists in the national economy. Campbell argues in response that the Secretary has misperceived the Court of Appeals' holding. Campbell reads the decision as requiring only that the Secretary give disability claimants concrete examples of the kinds of factual determinations that the administrative law judge will be making. This requirement does not defeat the guidelines' purpose; it ensures that they will be applied only where appropriate. Accordingly, respondent argues that we need not address the guidelines' validity.

## A

The Court of Appeals held that "[i]n failing to show suitable available alternative jobs for Ms. Campbell, the Secretary's finding of 'not disabled' is not supported by substantial evidence." 665 F. 2d, at 54. It thus rejected the proposition that "the guidelines provide adequate evidence of a claimant's ability to perform a specific alternative occupation," *id.*, at 53, and remanded for the Secretary to put into evidence "particular types of jobs suitable to the capabilities of Ms. Campbell," *id.*, at 54. The court's requirement that additional evidence be introduced on this issue prevents the Secretary from putting the guidelines to their intended use and implicitly calls their validity into question.[9] Accord-

---

[9] The Courts of Appeals have read the decision below as implicitly invalidating the guidelines. See *McCoy* v. *Schweiker, supra,* at 1145; *Torres* v. *Secretary of Health and Human Services, supra,* at 169; *Santise* v. *Schweiker, supra,* at 937, and n. 25.

ingly, we think the decision below requires us to consider whether the Secretary may rely on medical-vocational guidelines in appropriate cases.

The Social Security Act directs the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases. 42 U. S. C. § 405(a). As we previously have recognized, Congress has "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act." *Schweiker* v. *Gray Panthers*, 453 U. S. 34, 43 (1981); see *Batterton* v. *Francis*, 432 U. S. 416, 425 (1977). Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation,[10] our review is limited to determining whether the regulations promulgated exeeded the Secretary's statutory authority and whether they are arbitrary and capricious. *Herweg* v. *Ray*, 455 U. S. 265, 275 (1982); *Schweiker* v. *Gray Panthers*, *supra*, at 44.

---

[10] Since Congress amended the Social Security Act in 1954 to provide for disability benefits, Pub. L. 761, § 106, 68 Stat. 1079, it repeatedly has suggested that the Secretary promulgate regulations defining the criteria for evaluating disability. See, *e. g.*, Subcommittee on the Administration of the Social Security Laws of the House Committee on Ways and Means, Administration of Social Security Disability Insurance Program: Preliminary Report, 86th Cong., 2d Sess., 17–18 (Comm. Print 1960) (requesting Secretary to develop "specific criteria for the weight to be given nonmedical factors in the evaluation of disability"); House Committee on Ways and Means, Committee Staff Report on the Disability Insurance Program, 93d Cong., 2d Sess., 6 (Comm. Print 1974) (recommending that the Secretary promulgate regulations defining disability to ease accelerating caseload); Subcommittee on Social Security of the House Committee on Ways and Means, H. R. 8076—Disability Insurance Amendment of 1977, 95th Cong., 1st Sess., 7 (Comm. Print 1977) (comments of Rep. Burke) (noting with approval that the Secretary had promised to promulgate medical-vocational guidelines to define disability). While these sources do not establish the original congressional intent, they indicate that later Congresses perceived that regulations such as the guidelines would be consistent with the statute.

We do not think that the Secretary's reliance on medical-vocational guidelines is inconsistent with the Social Security Act. It is true that the statutory scheme contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing. See 42 U. S. C. § 423(d)(2)(A) (specifying consideration of each individual's condition); 42 U. S. C. § 405(b) (1976 ed., Supp. V) (disability determination to be based on evidence adduced at hearing). But this does not bar the Secretary from relying on rulemaking to resolve certain classes of issues. The Court has recognized that even where an agency's enabling statute expressly requires it to hold a hearing, the agency may rely on its rulemaking authority to determine issues that do not require case-by-case consideration. See *FPC* v. *Texaco Inc.*, 377 U. S. 33, 41–44 (1964); *United States* v. *Storer Broadcasting Co.*, 351 U. S. 192, 205 (1956). A contrary holding would require the agency continually to relitigate issues that may be established fairly and efficiently in a single rulemaking proceeding. See *FPC* v. *Texaco Inc.*, *supra*, at 44.

The Secretary's decision to rely on medical-vocational guidelines is consistent with *Texaco* and *Storer*. As noted above, in determining whether a claimant can perform less strenuous work, the Secretary must make two determinations. She must assess each claimant's individual abilities and then determine whether jobs exist that a person having the claimant's qualifications could perform. The first inquiry involves a determination of historic facts, and the regulations properly require the Secretary to make these findings on the basis of evidence adduced at a hearing. We note that the regulations afford claimants ample opportunity both to present evidence relating to their own abilities and to offer evidence that the guidelines do not apply to them.[11] The sec-

---

[11] Both *FPC* v. *Texaco Inc.*, 377 U. S. 33, 40 (1964), and *United States* v. *Storer Broadcasting Co.*, 351 U. S. 192, 205 (1956), were careful to note that the statutory scheme at issue allowed an individual applicant to show that the rule promulgated should not be applied to him. The regulations

ond inquiry requires the Secretary to determine an issue that is not unique to each claimant—the types and numbers of jobs that exist in the national economy. This type of general factual issue may be resolved as fairly through rulemaking as by introducing the testimony of vocational experts at each disability hearing. See *American Airlines, Inc.* v. *CAB*, 123 U. S. App. D. C. 310, 319, 359 F. 2d 624, 633 (1966) (en banc).

As the Secretary has argued, the use of published guidelines brings with it a uniformity that previously had been perceived as lacking. To require the Secretary to relitigate the existence of jobs in the national economy at each hearing would hinder needlessly an already overburdened agency. We conclude that the Secretary's use of medical-vocational guidelines does not conflict with the statute, nor can we say on the record before us that they are arbitrary and capricious.

B

We now consider Campbell's argument that the Court of Appeals properly required the Secretary to specify alternative available jobs. Campbell contends that such a showing informs claimants of the type of issues to be established at the hearing and is required by both the Secretary's regulation, 20 CFR § 404.944 (1982), and the Due Process Clause.

By referring to notice and an opportunity to respond, see 665 F. 2d, at 53–54, the decision below invites the interpretation given it by respondent. But we do not think that the decision fairly can be said to present the issues she raises.[12]

---

here provide a claimant with equal or greater protection since they state that an administrative law judge will not apply the rules contained in the guidelines when they fail to describe a claimant's particular limitations. See n. 5, *supra*.

[12] Respondent did not raise either her due process or her regulatory argument below. See Brief for Appellant in *Campbell* v. *Schweiker*, No. 81–6108 (CA2); Tr. of Oral Arg. 30. Nor has respondent filed a cross-petition. As she prevailed below, we could consider grounds supporting her judgment different from those on which the Court of Appeals rested its de-

The Court of Appeals did not find that the Secretary failed to give sufficient notice in violation of the Due Process Clause or any statutory provision designed to implement it. See 42 U. S. C. § 405(b) (1976 ed., Supp. V) (requiring that disability claimants be given "reasonable notice and [an] opportunity for a hearing"). Nor did it find that the Secretary violated any duty imposed by regulation. See 20 CFR § 404.944 (1982) (requiring the administrative law judge to "loo[k] fully into the issues"). Rather the court's reference to notice and an opportunity to respond appears to be based on a principle of administrative law—that when an agency takes official or administrative notice of facts, a litigant must be given an adequate opportunity to respond.[13] See 5 U. S. C. § 556(e); *McDaniel* v. *Celebrezze*, 331 F. 2d 426 (CA4 1964).

---

cision. See *Dandridge* v. *Williams*, 397 U. S. 471, 475–476, n. 6 (1970). But where the ground presented here has not been raised below we exercise this authority "only in exceptional cases." *McGoldrick* v. *Compagnie Generale Transatlantique*, 309 U. S. 430, 434 (1940). We do not think this is such a case.

Alternatively, respondent suggests that if the Administrative Law Judge had inquired conscientiously and fully into the relevant facts, as required by 20 CFR § 404.944 (1982), he would have concluded that she was not capable of performing light work. The Secretary concedes that § 404.944 requires such an inquiry, see Brief for Petitioner 42, but argues that the inquiry undertaken by the Administrative Law Judge satisfied any regulatory duty. Again respondent appears not to have presented her § 404.944 argument to the Court of Appeals, and we decline to reach it here.

[13] The Court of Appeals did not identify any basis for imposing this requirement other than its earlier decision in *Decker* v. *Harris*, 647 F. 2d 291 (CA2 1981). *Decker*, however, identified the source of this requirement more clearly. It stated: "This requirement of specificity . . . assures the claimant of adequate notice of the grounds on which his claim may be denied, providing him with an opportunity to present rebuttal evidence. See generally 3 K. Davis, Administrative Law Treatise § 15.18, at 198–206 (2d ed. 1980)." *Id.*, at 298.

In § 15.18 of his treatise, Professor Davis addresses the question of administrative or official notice of material facts in disability cases and the need for an adequate opportunity to respond. He states that an administrative law judge may take administrative notice of jobs in the national

This principle is inapplicable, however, when the agency has promulgated valid regulations. Its purpose is to provide a procedural safeguard: to ensure the accuracy of the facts of which an agency takes notice. But when the accuracy of those facts already has been tested fairly during rulemaking, the rulemaking proceeding itself provides sufficient procedural protection.[14] See, e. g., *Rivers* v. *Schweiker*, 684 F. 2d 1144, 1156 (CA5 1982); *Broz* v. *Schweiker*, 677 F. 2d 1351, 1362 (CA11 1982); *Torres* v. *Secretary of Health and Human Services*, 677 F. 2d 167, 169 (CA1 1982).

## IV

The Court of Appeals' decision would require the Secretary to introduce evidence of specific available jobs that respondent could perform. It would limit severely her ability to rely on the medical-vocational guidelines. We think the Secretary reasonably could choose to rely on these guidelines in appropriate cases rather than on the testimony of a vocational expert in each case. Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE BRENNAN, concurring.

I join the Court's opinion. It merits comment, however, that the hearing respondent received, see *ante*, at 462–463, if it is in any way indicative of standard practice, reflects

---

economy. He emphasizes, however, that "[a] quick remark by an ALJ that he takes official notice of availability of jobs in the national economy that would be suitable for the claimant could be unfair for lack of *sufficient specificity*. *The jobs should be identified, their characteristics should be stated . . . .*" § 15.18, at 204 (emphasis added). *Decker*'s reference to this treatise makes clear that the requirement of specificity derives from a principle of administrative law.

[14] Respondent does not challenge the rulemaking itself, and, as noted above, respondent was accorded a *de novo* hearing to introduce evidence on issues, such as physical and mental limitations, that require individualized consideration. See *supra*, at 462–463.

poorly on the Administrative Law Judge's adherence to what
Chief Judge Godbold has called his "duty of inquiry":

> "[T]here is a 'basic obligation' on the ALJ in these
> nonadversarial proceedings to develop a full and fair
> record, which obligation rises to a '"special duty . . . to
> scrupulously and conscientiously explore for all the rele-
> vant facts"' where an unrepresented claimant has not
> waived counsel. This duty of inquiry on the ALJ would
> include, in a case decided under the grids, a duty to in-
> quire into possible nonexertional impairments and into
> exertional limitations that prevent a full range of work."
> *Broz* v. *Schweiker*, 677 F. 2d 1351, 1364 (CA11 1982).[1]

In her brief to this Court, the Secretary acknowledges that
the Social Security regulations embody this duty and relies
upon it in answering respondent's due process contentions.
Brief for Petitioner 42 (citing *Broz* v. *Schweiker, supra*); see
20 CFR § 404.944 (1982); *ante*, at 468, and n. 12. The Admin-
istrative Law Judge's "duty to inquire" takes on special ur-
gency where, as here, the claimant has little education and
limited fluency in English, and, given that the claimant al-
ready has a right to a hearing, the additional cost of pursuing
relevant issues at the hearing is minimal.

---

[1] Accord, *Thompson* v. *Schweiker*, 665 F. 2d 936, 941 (CA9 1982); *Ware*
v. *Schweiker*, 651 F. 2d 408, 414 (CA5 1981); *Diabo* v. *Secretary of Health,
Education and Welfare*, 200 U. S. App. D. C. 225, 229, 627 F. 2d 278, 282
(1980); *Cox* v. *Califano*, 587 F. 2d 988, 991 (CA9 1978); *Smith* v. *Secretary
of Health, Education and Welfare*, 587 F. 2d 857, 860 (CA7 1978); *Gold* v.
*Secretary of Health, Education and Welfare*, 463 F. 2d 38, 43 (CA2 1972).
The "duty of inquiry" derives from claimants' basic statutory and constitu-
tional right to due process in the adjudication of their claims, including a *de
novo* hearing, see *Mathews* v. *Eldridge*, 424 U. S. 319, 332–335, 339 (1976);
*Richardson* v. *Perales*, 402 U. S. 389, 402–404 (1971). See also *Goldberg*
v. *Kelly*, 397 U. S. 254, 262–263 (1970). Inherent in the concept of a due
process hearing is the decisionmaker's obligation to inform himself about
facts relevant to his decision and to learn the claimant's own version of
those facts. *Goss* v. *Lopez*, 419 U. S. 565, 580 (1975).

In order to find that respondent was not disabled, the Secretary had to determine that she had the physical capacity to do "light work," compare 20 CFR pt. 404, subpt. P, app. 2, § 201.10 (1982), with *id.*, § 202.10, a determination that required a finding that she was capable of frequent lifting or carrying of objects weighing up to 10 pounds and sometimes lifting up to 20 pounds, 20 CFR § 404.1567(b) (1982). The hearing record included one disinterested doctor's report of a medical examination of respondent that concluded with the unexplained statement "Patient may return to light-duty work," App. 11, and a subsequent report by a second disinterested doctor stating that respondent could lift and carry only "up to 10 pounds," *id.*, at 32. In finding that respondent could perform "light work," the Administrative Law Judge rejected the second doctor's report as "without basis." App. to Pet. for Cert. 23a–25a. Yet he failed entirely to adduce evidence relevant to this issue at respondent's hearing. At several points during the hearing, respondent stated that she could not lift things, but the Administrative Law Judge did not question her on the subject at all,[2] nor did he make any inquiry whether by "light-duty work" the first doctor meant the same thing as the Secretary's term "light work."

The Administrative Law Judge further failed to inquire whether factors besides strength, age, or education, combined with her other impairments, rendered respondent disabled. See 20 CFR pt. 404, *supra*, § 200.00(e)(2); *ante*, at 462, n. 5. Apparently such factors could have been dispositive of

---

[2] The following colloquy appears on the record:
"Q. Can you bend?
"A. I cannot bend. The doctor warned me not to lift weights.
"Q. Uh-huh.
"A. And—
"Q. I notice you have stood up several times since you've been in here."
App. 49–50.
At no point did the Administrative Law Judge so much as ask respondent how she did her shopping, or any other question that might have elicited information on the crucial question of how much she could regularly lift.

the case before us: The Secretary has since determined that respondent is in fact disabled, see *ante*, at 463, n. 7, based on consideration of severe emotional complications not explored at all by the Administrative Law Judge in the hearing that led to her petition for review in this case.[3]

This issue was not presented to the Court of Appeals, nor passed upon by it. See *ante*, at 468–469, n. 12. In terms of ensuring fair and accurate determinations of disability claims, the obligation that the Court of Appeals would have placed on administrative law judges was a poor substitute for good-faith performance of the "duty of inquiry" they already have. The federal courts have been successful in enforcing this duty in the past, see n. 1, *supra*, and I respectfully suggest that the Secretary insist upon its faithful performance in future cases.

JUSTICE MARSHALL, concurring in part and dissenting in part.

While I agree that the Secretary's medical-vocational guidelines are valid, I believe that this case presents the additional question whether the Administrative Law Judge fulfilled his obligation to "loo[k] fully into the issues." 20 CFR § 404.944 (1982). See *Richardson* v. *Perales*, 402 U. S. 389, 410 (1971) (at the hearing the administrative law judge is required to "ac[t] as an examiner charged with developing the facts"). I would therefore remand this case for further proceedings.

I do not agree with the Court, *ante*, at 468–469, that the decision below does not question the adequacy of the Administrative Law Judge's inquiry at the hearing. Although the Court of Appeals' opinion is not entirely clear, the court ap-

---

[3] See App. to Brief for Respondent 2a–3a. The decision appears to have rested on evidence similar to the evidence in the record at the hearing in this case, except that the Administrative Law Judge took note that respondent was "an obese, sad individual, who had marked difficulties in sitting, standing, and walking," and he found that her severe back disorder was "complicated by an emotional overlay." *Id.*, at 3a.

pears to have concluded that Campbell was not given an adequate opportunity to demonstrate that she was unable to perform "light work." The court explained as follows:

> " 'The key consideration in the administrative proceeding must be that the claimant be given adequate opportunity to challenge the suitability . . . of the jobs noticed. . . .' [O]ur major concern is that the claimant be given adequate notice of the nature and demands of the types of jobs allegedly available. Absent sufficient notice, the claimant is deprived of any real chance to present evidence showing that she cannot in fact perform the types of jobs that are administratively noticed by the guidelines. This is particularly true in Ms. Campbell's case where the ALJ gave no indication of any specific 'light work' jobs that she was capable of performing . . . ." *Campbell* v. *Secretary of Dept. of Health and Human Services,* 665 F. 2d 48, 53–54 (CA2 1981), quoting *Decker* v. *Harris,* 647 F. 2d 291, 298 (CA2 1981).[1]

The Court of Appeals remanded the case for further administrative proceedings at which Campbell would be given "a listing of particular types of jobs suitable to the capabilities of Ms. Campbell." 665 F. 2d, at 54.

The Court of Appeals' concern was amply justified in light of the hearing that was conducted in this case. The central

---

[1] It was certainly not anticipated that this procedure "would limit severely [the Secretary's] ability to rely on the medical-vocational guidelines," *ante,* at 470, or "rende[r] the guidelines useless." *Ante,* at 465. The court noted simply that

"if there are [approximately 1,600 types of 'light work'] jobs available, it would not be too great a burden for the Secretary or the ALJ to specify a few suitable alternative available types of jobs so that a claimant is given an opportunity to show that she is incapable of performing those jobs. Moreover, we stress that the jobs should be specified at the hearing so that the claimant has a chance to put evidence into the record on that issue." 665 F. 2d, at 54.

issue at respondent's hearing was whether she was capable of performing "light work."[2]  If Campbell had shown that she was unable to perform "light work," she would have been entitled to disability benefits under the Secretary's guidelines. Although Campbell was afforded a hearing to determine whether she was disabled, she was never apprised of this central issue either in advance of or during the hearing.  She was not represented by counsel, and the Administrative Law Judge who conducted the hearing never explained to her what "light work" entailed.  Moreover, although the judge inquired at length into respondent's medical problems, he conducted little inquiry into the effect of her medical problems on her capacity to perform work.  Yet reasonably complete questioning concerning the claimant's ability to function in her daily activity was essential to resolving this question in a fair manner.[3]

---

[2] "Light work" is defined in the regulations as follows:

"(b) *Light work.*  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR § 404.1567 (1982).

[3] The availability of medical evidence, much of which supported respondent's claim of disability, was no substitute for an examination of the claimant herself.

"[I]f the hearing is meant to be an individualized inquiry into how this claimant's functioning is impaired by his medical conditions, then that evidence must almost certainly come from the claimant himself, or from people who come in contact with him in his daily life.  Since in most hearings no one other than the claimant is there to testify to his daily activities, who does not also have an interest in the success of the claim, it is imperative that ALJs draw out of the claimants, in great detail, information about how they function with their limitations.  This is the crucial arena for credibility judgments by ALJs.  Moreover, it seems clear that such judgments will necessarily be made, whether or not the claimant's situation is fully

476

The above-quoted portions of the Court of Appeals' decision demonstrate to my satisfaction that the question whether respondent received an adequate hearing is fairly raised by the decision below. It would have been well within the Court of Appeals' authority under 42 U. S. C. § 405(g) (1976 ed., Supp. V) to order a new hearing if the court concluded that the Administrative Law Judge failed to conduct an adequate inquiry.[4] That appears to be just what the court did when it remanded the case. The court required the judge to fulfill his obligation to elicit testimony concerning respondent's capacity to perform "light work" by giving her a few examples of specific types of "light work" and allowing her to explain why she is unable to perform such work.

---

explored by the ALJ." Subcommittee on Social Security of the House Committee on Ways and Means, Social Security Administrative Law Judges: Survey and Issue Paper, 96th Cong., 1st Sess., 47 (Comm. Print 1979).

[4] See, e. g., Currier v. Secretary of Health, Education and Welfare, 612 F. 2d 594, 598 (CA1 1980); Veal v. Califano, 610 F. 2d 495, 497–498 (CA8 1979); Cox v. Califano, 587 F. 2d 988, 990–991 (CA9 1978); Copley v. Richardson, 475 F. 2d 772, 773–774 (CA6 1973).