765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CLARENCE H. MURPHY, JR., PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 83-5816
 United States Court of Appeals, Sixth Circuit.
 5/28/85
 
 On Appeal from the United States District Court for the Eastern District of Tennessee
 BEFORE: KEITH and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from a grant of summary judgment by the United States District Court for the Eastern District of Tennessee affirming the denial of applications for a period of disability, disability insurance benefits and supplemental security income (SSI) by the Secretary of Health and Human Services (Secretary). For the reasons stated below, we affirm the decision of the district court.
 
 FACTS
 
 2
 Mr. Murphy filed applications for disability insurance benefits and supplemental security income on September 23, 1981. His claim was denied initially and on reconsideration. Murphy appealed his denial to an Administrative Law Judge (ALJ). In his decision, the ALJ summarized and evaluated the testimony offered at the hearing held on September 17, 1982, and the medical evidence of record. The ALJ denied plaintiff's claim by decision dated October 28, 1982, because plaintiff did not have an impairment or combination of impairments which prevented him from performing sedentary work. Plaintiff subsequently appealed to the Appeals Council, which affirmed the decision of the ALJ. Appeal to the United States district court was timely filed, and summary judgment on the pleadings was granted in favor of the Secretary. This appeal followed.
 
 
 3
 Appellant was born on November 29, 1958 and was twenty-three (23) years old at the time of the ALJ's decision. Appellant alleges disability from September 18, 1981, due to a gunshot wound in the stomach, spinal injury, learning disabilities and emotional disturbance. At 23, appellant is still a younger individual, as defined by the regulations. 20 C.F.R. Secs. 404.1563, 416.963. He is essentially 'illiterate' despite a ninth grade education. Murphy has performed unskilled work requiring at least medium exertion as a carpenter's helper and welder.
 
 
 4
 At the hearing before the ALJ, Murphy alleged that he has been unable to work since September 18, 1981, when he attempted suicide by shooting himself in the abdomen twice, resulting in injuries to his stomach, back and right leg. Murphy now reports some numbness or loss of feeling in the right leg occasionally accompanied by weakness and burning pain. Appellant reports that he falls down at times, and that he finds it difficult to lift objects due to his back discomfort. Additionally he reports that he continues to be nervous and depressed, although not as severely as before, that he has problems with memory, and that he has no social life. Although Murphy feels his back has improved somewhat, he reports that he is unable to find anyone to hire him and is unable to afford continued medical treatment. Mr. Murphy's sister corroborated his testimony.
 
 
 5
 Appellant required hospitalization for eleven (11) days following his suicide attempt. Mr. Murphy's gunshot wounds resulted in severed arteries near the small intestine, and left metallic fragments in the lower spinal area. X-rays at that time failed to reveal any major fracture of the spine and reflected that the bullet did not damage the spinal cord itself. The physicians did not feel that Murphy's back fracture resulted in any instability although he was on crutches for a short period of time. While hospitalized, appellant required surgery on two occasions. The surgeries went smoothly and appellant suffered no inordinate complications.
 
 
 6
 Murphy was examined by a number of physicians. Following Murphy's relese from the hospital, his surgeon, Dr. James Callaway, noted that Murphy had made a satisfactory recovery. Dr. Callaway felt that although Murphy had some muscular weakness involving the quadraceps of the right leg, any continuing impairment would be partial. Dr. Callaway expected Murphy to compensate in time with appropriate motivation; although he did question appellant's motivation to return to work. At that time appellant's reflexes of the knee and ankle were satisfactory and his flexion of the toe was quite strong suggesting that there was no significant neurological damage. However, Dr. Jack Roberts, a Board Certified internist, reported that Murphy suffered from a disease of the spinal nerve roots, a diagnosis supported by a clinical evaluation showing no reflexes in Murphy's right leg with reduced sensation and strength on the right side. An evaluation by Board certified orthopedic surgeon Dr. Martin Baker in April, 1982 also showed absent reflexes of the right leg. However, appellant had no restriction in the motion of his hips, thus leading Dr. Baker to think that appellant continued to possess the ability for sedentary work activity.
 
 
 7
 Although the claimant is illiterate and has apparently had some learning problems consistent with his borderline intelligence as evidence by recent an IQ of 70, it does not appear that his intellectual abilities are severely impaired. Murphy has been able to perform unskilled work in the past and both recent psychiatric and psychological evaluations have suggested that vocational rehabilitation might permit him to return to unskilled work or other loss demanding work at some time in the future.
 
 
 8
 Although appellant did suffer severe depression resulting in a suicide attempt in September 1981, both the psychologist and psychiatrist agree that appellant is no longer suicidal and report that his depression is only of moderate severity at present. While Murphy's sister testified that he continued to be depressed, the appellant had not been receiving treatment for his emotional condition, and he is not taking any anti-depressant medication. Thus, the ALJ opined that the appellant's moderate depression could be further improved with treatment and medication. Mr. Murphy is described as having a passive-aggressive, dependent personality and his motivation to return to work has been questioned by several of the physicians including the psychologist and psychiatrist. The psychologist noted particularly that Mr. Murphy's IQ score had been decreased, possibly, due to his reduced effort during testing. Although appellant was treated nine times September through December 1981 at Overlook Mental Health Center, the report from Overlook does not describe him as disabled on a psychiatric or emotional basis but suggests that there is a possibility of vocational rehabilitation despite some continuing depression and emotional difficulties.
 
 DISCUSSION
 
 9
 Appellant offers two bases for overruling the decision of the district court. Appellant contends that the Secretary erred in relying upon vocational grid regulations in determining his claim and that the Secretary's decision is not supported by substantial evidence. Initially we address the latter contention.
 
 
 10
 In order to establish entitlement to the disability insurance benefits, appellant must prove that he has become unable to engage in any substantial gainful activity by reason of a physical or mental impairment, the existence of which is demonstrated by medically acceptable clinical and laboratory diagnostic findings. Ragan v. Finch, 435 F.2d 239 (6th Cir. 1970), cert. denied, 402 U.S. 986 (1971); Jenkins v. Gardner, 430 F.2d 243 (6th Cir. 1970), cert. denied, 400 U.S. 1001 (1971). Although the Secretary recognizes that Mr. Murphy experiences some back difficulties and learning disabilities, the alleged subjective discomfort and the medical evidence do not document a condition of such severity as to preclude plaintiff from performing substantial gainful activity of a sedentary nature. 20 C.F.R. Secs. 404.1569; 416.969.
 
 
 11
 Following his suicide attempt, there were no maladies from which appellant would not substantially recover. Dr. Robert Haralson, an orthopedist, examined appellant and did not feel he had any permanent instability as a result of the back injury. Dr. Martin R. Baker found that appellant could engage in sedentary work since he still had a normal range of motion in all joints of the hips, and there was no major muscle group weakness. Also, though teh doctors suggest appellant suffers from pain, none of it was so clear cut, severe and persistent as to support a finding of disabling pain.
 
 
 12
 The only restriction imposed upon Mr. Murphy's discharge was avoidance of strenuous activities. While the attempted suicide clearly incapacitated appellant, there was nothing in the medical evidence to suggest that the residuals from the gunshot would severely impede appellant's ability to engage in substantial gainful employment. Mr. Murphy's post operative course did not involve any complications and the initial injury caused by the gunshot was repaired. Since the relevant physical impairments could be reasonably remedied or controlled by treatment, they cannot serve as a basis for a finding of disability. 20 C.F.R. 404.1530 (1981); Willis v. Gardner, 377 F.2d 533 (4th Cir. 1967); Brady v. Ribicoff, 298 F.2d 855 (4th Cir.), cert. denied, 370 U.S. 951 (1962).
 
 
 13
 The medical evidence is equally supportive with respect to non-exertional limits. While plaintiff does appear to have a learning disability, his intellectual abilities are not so severely impaired as to prevent unskilled sedentary work activity. Appellant was able to perform unskilled work in the past; and both the psychological and psychiatric reports suggest that vocational rehabilitation would allow Murphy to return to sedentary work. Subnormal intelligence which has been lifelong cannot be considered disabling under the terms of the Social Security Act without a showing that the condition has deteriorated at or after the time plaintiff ceased work. Banks v. Celebrezze, 341 F.2d 801 (6th Cir. 1965). It is clear that Mr. Murphy's mental impairment is not of the requisite severity to interfere significantly with his capacity to perform work related functions.
 
 
 14
 Finally appellant alleges disability based upon his emotional disturbance. The Secretary does not deny that at one point Mr. Murphy's depression was severe enough for him to attempt suicide. However, the present medical evidence of record fails to disclose that this psychological disturbance is severe enough to restrict appellant from engaging in sedentary levels of work. The psychological report of December 1981 describes appellant as moderately depressed although not psychotic or suicidal. Testing also revealed that if Mr. Murphy's emotional condition was stabilized and he was motivated he could possibly perform in the low average range of intelligence. A residual functional capacity evaluation completed by psychological examiner Marilyn Daphus, revealed that appellant did not experience a construction of interests, nor was he restricted in his ability to relate to other people, to understand instructions, to carry out instructions or to sustain work performance.
 
 
 15
 In addition to the medical evidence, we must respect the factual findings of the ALJ. Since it is the function of the Secretary and not this Court, to pass on the credibility of witnesses, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972), we must respect the findings of the ALJ who weighed appellant's testimony in balance with the other subjective and medical evidence of record and concluded that appellant was not disabled. The factual determination as to whether appellant is able to work despite his pain is within the discretion of the ALJ. This determination will not be overturned when, as here, it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947 (5th Cir. 1980); Newborn v. Harris, 602 F.2d 105 (5th Cir. 1979). The medical and subjective evidence taken in its entirety fail to support the conclusion that the relevant impairments prevent appellant from performing at least sedentary work.
 
 
 16
 In sum we find the Secretary's finding that appellant is not disabled to be supported by substantial evidence. Next, we address appellant's contention that the Secretary erred in relying on the vocational guidelines in evaluating his disability claim.
 
 
 17
 Appellant offers three bases for the proposition that the Secretary's use of the vocational grid regulations was error. Appellant initially contends that the grid is inapplicable because he has both non-exertional and exertional impairments that are not accurately described by the regulations. Heckler v. Campbell, 103 S.Ct. 1952, 1955, footnote 5 (1983).
 
 
 18
 Apellant also contends that the record is absent an adequate discussion and evaluation of his non-exertional claims and that the Secretary has been improperly applying a presumption that he is capable of unskilled sedentary work because he does not meet the requirements of a listed mental impairment. Appellant claims that because his non-exertional impairments prevent him from performing a full range of sedentary work the case requires remand to the Secretary for proper consideration of appellant's non-exertional impairments including testimony of a vocational expert.
 
 
 19
 From reading the relevant vocational guidelines it seems clear that appellant's condition is reasonably described. 20 C.F.R. Sec. 404, Subpart P, Appendix 2 Sec. 200.00(e)(2) reads:
 
 
 20
 However, where an individual has an impairment or combination of impairments resulting in both strength limitations and non-exertional limitations, the rules in this subpart are considered in determining first whether a finding of disability may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations. Also, in these combinations of non-exertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.
 
 
 21
 In reaching the conclusions in this case, the Secretary adequately discussed both the non-exertional and exertional claims. As the regulations mandate, the Secretary made a specific finding that appellant retained the residual functional capacity to perform sedentary work before considering the additional limiting effect of the non-exertional impairments. This becomes clear in looking at the ALJ's final three findings:
 
 
 22
 11. Based on the claimant's exertional limitations only, Regulations 404.1569 and 416.969 and Rule 201.23, Table No. I, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, is not disabled.
 
 
 23
 12. The claimant's non-exertional limitations do not significantly affect his residual functional capacity for unskilled, sedentary work and, therefore, considering that capacity within the framework of the above rule, the claimant is not disabled.
 
 
 24
 13. The claimant was not under a 'disability' as defined in the Social Security Act at any time through the date of this decision.
 
 
 25
 Jt. App. at 27. As we read the ALJ's opinion, finding number 12 clearly implies that given the residual functional capacity left after consideration of the physical impairment, the non-exertional limits did not significantly affect appellant's ability to perform sedentary work. We do not agree.
 
 
 26
 There are three reports which reveal appellants non-exertional limitations, the report from the Overlook Mental Health Center and the reports of Dr. McCoy, a psychologist and Dr. Gee, a psychiatrist. Because appellant was unable to attend regular appointments, the Overlook report is inconclusive on the issue of the impact of Murphy's non-exertional impairments on his functional capacity. Dr. McCoy found that Murphy was 'not completely disabled by his mental condition, although he would be handicapped in getting most jobs.' Jt. App. at 158. Dr. Gee found that appellant's ability to hold a job would have to be partially determined by physical examiners, 'although there is some degree of incapacity related to his tension, depression, borderline I.Q. and illiteracy.' Jt. App. at 165. In our view, these reports show that Murphy's non-exertional limitations significantly affect his ability to perform sedentary work. Therefore, our ruling in Kirk v. Secretary, 667 F.2d 524 (1981), renders the vocational grid rules inapplicable in the instant case. Pursuant to the Supreme Court ruling in Heckler v. Campbell, 461 U.S. 458 (1983) we are constrained to remand this case for vocational expert testimony.
 
 
 27
 Accordingly, we hereby remand this case to the district court with orders to remand to the Secretary in order to consider the testimony of a vocational expert.