

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-2004

# Lamanna v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2483

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lamanna v. Comm Social Security" (2004). *2004 Decisions.* Paper 116.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 04-2483

—————

CAPRICE LAMANNA,
Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

—————

On Appeal From the United States
District Court For the District of New Jersey
(D.C. Civil Action No. 01-cv-02616)
District Judge:  Hon. William H. Walls

—————

Argued November 2, 2004

BEFORE:  ALITO, FUENTES and STAPLETON, Circuit Judges

(Opinion Filed November 24, 2004)

—————

Abraham S. Alter (Argued)
Langton & Alter
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ  07065
 Attorney for Appellant

Ellen Sovern (Argued)
Social Security Administration
Office of General Counsel - Region II
26 Federal Plaza
New York, NY 10278
  Attorney for Appellee

————————

OPINION OF THE COURT

————————

STAPLETON, Circuit Judge:

Claimant/Appellant Caprice Lamanna was a school bus driver. On August 4, 1992, she was involved in a motor vehicle accident. As a result of the accident, she suffered cerebral contusion with post-traumatic syndrome, a cervical sprain, a lumbar sprain and intrapelvic nerve injuries. She was able to continue her work as a bus driver, however, until she ceased that employment on May 31, 1994.

The Commissioner found Lamanna disabled by post-traumatic syndrome as of June 21, 1995. She asked for reconsideration, however, insisting that she was disabled as of the date of the accident. Subsequently she modified her position claiming disability as of May 31, 1994, her last day of work. After a hearing, the ALJ determined that Lamanna was not entitled to benefits prior to June 21, 1995. The Appeals Council denied review.

Lamanna claims that the Commissioner's decision with respect to the period before June 21, 1995, cannot stand because: (1) the ALJ's findings with respect to her

2

residual functional capacity are not supported by substantial evidence; (2) the ALJ failed to compare her conditions with the "listings" at step three of the sequential analysis required by the regulations; and (3) the Commissioner failed to carry her burden of showing at step five of that analysis that there were jobs existing in the national economy that Lamanna could perform.

The ALJ reviewed the medical evidence in some detail. He pointed out that, while Dr. Kreider, Lamanna's treating physician after the accident, had reported in a September 13, 1993, letter that Lamanna "suffered from a cerebral contusion with post traumatic syndrome, cervical sprain, lumbar sprain and intrapelvic nerve injuries," those injuries were not severe enough to prevent her from continuing to serve as a bus driver for the next 8-1/2 months. He further noted that she did not see Dr. Kreider for over two years after that letter was written and that when she did see him again on November 14, 1995, her "most severe" complaint was of depression. Most importantly, the ALJ observed that, with the exception of a psychological evaluation performed in the summer of 1994, Lamanna, prior to June 21, 1995, had been under no medical, psychological or psychiatric treatment. Nor was there any evidence that she had ever been prescribed or taken anti-depressant medications. Based on these facts and the reports of the 1994 psychological evaluation, the ALJ concluded that Lamanna's "complaints of post traumatic distress disorder prior to June 21, 1995 were far out of proportion with the medical findings."

Based on his evaluation of the evidence, the ALJ concluded that there was no

significant medical evidence to support the view that Lamanna had exertional impairments prior to June 21, 1995, that would preclude her from performing a full range of sedentary work activity. The ALJ further concluded based on that evaluation that Lamanna had no relevant non-exertional impairments before that date other than severe episodic vertigo that precluded her from operating moving machinery. The ALJ's discussion of the evidence demonstrates, we believe, that there is substantial evidence supporting these conclusions. Contrary to Lamanna's suggestion, the fact that she was found to have reached the point of disability from post-traumatic stress disorder on June 21, 1995, does not demonstrate that she was disabled prior to that date. If this suggestion were accepted, an onset date could never be established.

Nor are we persuaded by Lamanna's second argument. While it is true that step three of the sequential analysis required by the regulations calls for a comparison with the listed impairments that dictate a finding of disability, this cannot reasonably be understood to require such a comparison when the claimant's condition does not come close to meeting any listing. We find it significant that Lamanna's brief does not identify any listing that she claims to have met. It follows that acceptance of her argument would require a comparison with every listing.

Turning to Lamanna's third argument, we stress that she does not argue that a Social Security Ruling cannot provide substantial evidence at step 5 in a case involving both exertional and non-exertional impairments. Accordingly, we express no opinion on

4

the issue we reserved in *Sykes v. Apfel*, 228 F.3d 259 (3d Cir 2000) – "whether Social Security Rulings can serve the same function as the ['Grid'] rule making upheld in" *Heckler v. Campbell*, 461 U.S. 458 (1983).

We are unable to accept the ALJ's ruling at step 5, however. The ALJ correctly concluded that Lamanna was unable to perform her past work and that, accordingly, the Commissioner had the burden of proof at step 5. He further correctly concluded that, because this case involved a non-exertional impairment, *i.e.*, severe episodic vertigo, the Commissioner could not rely solely on the "Grids" to carry that burden. His explanation of how the Commissioner had carried that burden, however, does not permit the judicial review to which Lamanna is entitled.

The ALJ made the following factual finding:

Prior to June 21, 1995, the claimant had the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for operating moving machinery due to her episodic vertigo (20 CFR 404.1545).

App. at 14. He then relied upon Social Security Ruling 85-15 to provide support for his finding that there were jobs in the national economy that Lamanna could perform prior to June 21, 1995:

[W]ithin the teachings of Social Security Ruling 85-15, the undersigned concludes that there was no significant erosion of the claimant's occupational base due to the lack of "significant" non-exertional limitations.

* * *

Prior to June 21, 1995, the claimant's capacity for the full range of sedentary work was not significantly compromised by her non-exertional

limitations. Accordingly, using the above-cited rule as a framework for decisionmaking, the claimant was not disabled, prior to June 21, 1995.

App. at 14, 15.

Assuming that a Social Security Ruling can in some circumstances provide an evidentiary basis for a factual finding at step 5, it is clear from *Sykes* that references to "the teachings" of an SSR or to the use of an SSR as a "framework for decisionmaking" will not suffice when it is not possible for a reviewing court to determine what portion of the cited ruling the ALJ thought "direct[ed] a determination of nondisability in" the case before him. *Sykes*, 228 F.3d at 271. SSR 85-15 is nine pages in length, and it is not apparent to us from the ALJ's opinion how the ALJ found such a directive.

The non-extertional impairment found by the ALJ was an inability to "operat[e] moving machinery due to . . . episodic vertigo." Without further enlightenment with respect to the extent of this impairment and the ALJ's analysis of SSR 85-15, we are unable to determine whether the Commissioner carried her burden at step 5.[1]

We will reverse the judgment of the District Court and remand with instructions to send this matter back to the ALJ for further findings and explanation.

---

[1] The Commissioner's brief before us directs our attention to a section of SSR 85-15 addressing "Environmental Restrictions," which includes a reference to "a person with a seizure disorder who is restricted only from being near dangerous equipment." It does not appear to address the circumstances of a person who cannot "operate" any kind of "moving machinery," much less "direct a determination of non-disability in" such a case. The brief also cites to support the ALJ's conclusion SSR 96-9p, which states that a prohibition from working near "moving mechanical parts of equipment, tools, or machinery" would not significantly erode the unskilled, sedentary work base. That Ruling, however, was not cited by the ALJ and is therefore not properly before this Court.