Wesley SHULTZ

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services.

Civ. A. No. 85–1719.

United States District Court, E.D. Pennsylvania.

Nov. 12, 1986.

Eric L. Segal, Philadelphia, Pa., for plaintiff.

Susan Dein Bricklin, Asst. U.S. Atty., for defendant.

### MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Secretary of Health and Human Services ("the Secretary") denying his claim for disability benefits and supplemental security income. This case comes

before us on cross-motions for summary judgment. For reasons discussed below, we grant plaintiff's motion for summary judgment and remand this matter to the Secretary for calculation of benefits.

## I.

Plaintiff claims that he is disabled as a result of a back injury he suffered in October 1980. An earlier application for disability benefits, alleging onset of disability in January of 1980, was filed on October 29, 1981. Benefits were denied on January 6, 1982, and reconsideration was denied on or about April 6, 1982. Plaintiff again applied for benefits on December 29, 1983, alleging onset of disability in October of 1981. A hearing was held on July 11, 1984 before an administrative law judge (ALJ), whose decision denying benefits was entered on August 23, 1984. The Appeals Council of the Social Security Administration denied review on February 12, 1985. The decision of the ALJ is thus the final decision of the Secretary.

The first issue we must consider is the time period with respect to which we are to review the Secretary's determination. It appears from the transcript of the July 11, 1984 hearing that plaintiff's counsel was unaware of the 1981 application for and 1982 denial of benefits until the ALJ brought the matter to the attention of counsel. Court Transcript (Tr.) at 26. Plaintiff's counsel's confusion has now been compounded. In his motion for summary judgment, plaintiff makes no reference to having filed a separate application for benefits in December of 1983. Rather, plaintiff treats the 1984 hearing as though it had been a review of the 1982 determination, stating that

> "[t]he Plaintiff ... applied for Social Security disability benefits on October 29, 1981. Following the denial of his application and a further denial upon his request for reconsideration, he sought a hearing before an Administrative Law Judge. That hearing was held on July

11, 1984. The Administrative Law Judge denied Plaintiff's claim in a decision handed down on August 23, 1984."

Docket No. 6 at 1.

We cannot agree with plaintiff's characterization of the procedural history of his applications for benefits. Plaintiff's request for a hearing on March 21, 1984 was not a timely request for *de novo* review of the April 1982 determination. *See* 42 U.S.C. § 405(b)(1) (sixty-day time limit for request for hearing). At most, plaintiff can be understood to have requested that the determination of April 1982 be reopened.

■ Under 20 C.F.R. § 404.987(a), a decision may be reopened "if new and material evidence is furnished." A comparison of the list of exhibits before us and the list of exhibits considered by the Secretary in reaching his 1982 decision shows that no new evidence was presented for the period ending April 1982. Thus, we agree with the ALJ that the evidence presented did not warrant reopening the determination of April 8, 1982 denying benefits for the period ending on that date. We hold that the April 1982 decision has *res judicata* effect with respect to plaintiff's claims for benefits prior to that date.[1] *See* C.F.R. § 404.957(c)(1).

## II.

As to plaintiff's request for benefits for the period subsequent to April 8, 1982, the question before us is whether the Secretary's denial of benefits was based upon substantial evidence, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981). We will consider evidence from the period prior to April 1982 to the extent it provides necessary background for the determination under review.

Plaintiff Wesley Shultz was born on July 28, 1941, and is a high school graduate.

---

1. Despite the fact that plaintiff's first application for benefits was filed on October 29, 1981, medical evidence regarding treatment up to March 23, 1982 was considered at the time of plaintiff's request for reconsideration in April of 1982. Thus, the ALJ was correct in treating the April 1982 final determination as pertaining to disability up to that date.

He worked as a machine press operator for thirteen years and, more recently, as an aircraft assembler for approximately three years. In January 1980, plaintiff slipped at work and hit his back against a metal bar or grating. He was out of work until May 1980, and then returned to his former job. He stopped working in October 1980, complaining of severe pain in his lower back radiating down his right leg. He was admitted to Methodist Hospital, where he was diagnosed by Dr. Stephen Reznak as having acute cervical radiculopathy and lumbosacral radiculopathy. Tr. 163.[2] Treatment included intensive physical therapy, use of a TENS unit, and pain medication. Tr. 164. A myelogram performed on October 21, 1980 showed a small extra-dural defect consistent with bulging discs of L4–L5 and slight blunting of the nerve routes at C5–6. Tr. 182, 185.

Plaintiff saw his treating physician, Dr. Reznak, monthly between January and May 1981. Throughout this period, plaintiff complained of severe pain in his neck and back. Dr. Reznak referred plaintiff to Dr. Shankar, a neurosurgeon, for evaluation for surgery (Tr. 160), and to Dr. Nardini, an orthopedist, for treatment (Tr. 154). Plaintiff was hospitalized at Methodist Hospital three times between March and May 1981. At his intake evaluation, it was noted that plaintiff took Valium and Dervocet for pain. Plaintiff stated that he did not wish to have surgery. Tr. 199. An epidural block was performed, without relief. Tr. 241. Dr. Staas reported that there was no objective evidence of findings to correlate with plaintiff's symptoms, and that "P.T.", most likely meaning physical therapy, had nothing to offer him. Tr. 192. Plaintiff was scheduled for an appointment at the pain center of McGee Hospital for treatment of his chronic pain. Tr. 204. A lumbar discography was performed as a follow-up to the myelogram, with normal results. Tr. 213. Plaintiff underwent injection of Depumedrol and Xylocaine into the subocciptal paracervical area. Tr. 214. Final diagnosis was acute cervical and lumbosacral strain; plaintiff was discharged on Tylenol with Codeine and Valium as pain medications.

Later evaluations recite that plaintiff reports that he has persistent back pain. Dr. Nardini, an orthopedist, stated that plaintiff had been "disabled since injury," and that plaintiff restricts his motion in part due to fear of pain. Tr. 235. Dr. Tornay, who performed psychiatric and neurologic examinations in March of 1982, concluded that "there is so great a functional overlay that neurosurgeon or orthopedic surgeon should be extremely cautious about any surgical intervention," and that further tests should be done to confirm the results of the myelogram. Tr. 244. Hospital records state that plaintiff had been seen twice in the emergency room due to severe pain, and that he was seen by Dr. Shankar for neurosurgical evaluation. Tr. 247. For the purpose of review of plaintiff's workman's compensation claim, plaintiff was seen by Dr. Williams, an orthopedist, in November 1983. Dr. Williams stated that plaintiff did not have a herniated disc caused by his injury, but rather a congenital insufficiency of disc material, and concluded that plaintiff was not disabled. Tr. 287. Dr. Williams recommended a Discogram followed by surgery to fuse the back. Plaintiff reported that Dr. Shankar had opposed fusion. Tr. 284.

Plaintiff returned to work in January 1984, because he was being threatened with loss of workman's compensation benefits and seniority. Tr. 44. He attempted to do assembly work at a bench for two days, but he developed severe back and leg pain and was taken out on a stretcher. *Id.* The work required constant sitting and occasional lifting of up to ten pounds. Tr. 47. He was seen in the emergency room, and then admitted to Methodist Hospital for treatment and evaluation. Tr. 251, 276. Dr. Reznak, plaintiff's treating physician, stated that plaintiff's symptoms were consistent with an exacerbation of a herniated disc. Tr. 276. Dr. Thakarar concluded after an evaluation that plaintiff had a herni-

---

**2.** Citations in this format are to the record.

ated lumbar disc, and that he should avoid prolonged sitting, standing, walking, pushing, pulling, or lifting heavy objects. Tr. 266. In May 1984, Dr. Reznak reported that plaintiff suffered from post-traumatic lumbosacral radiculopathy, and concluded that plaintiff was disabled for any type of work. Dr. Shankar reviewed a CAT scan done in May 1984, and stated that there was considerable bulging into the canal at L4–5 and L5,S1. He recommended physical therapy and concluded that plaintiff "remains disabled to do any work at present." Tr. 274.

### III.

The ALJ found that the medical evidence established that plaintiff has severe post-traumatic lumbosacral radiculopathy, but that plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. The ALJ found that plaintiff is unable to perform his past relevant work as an aircraft assembler, but that he has the residual functional capacity to perform the full range of sedentary work. Applying Rule 201.25, Table No. 1 of Appendix 2, Subpart P, the portion of the medical-vocational guidelines applicable to plaintiff's residual functional capacity, age, education and previous work experience, the ALJ concluded that plaintiff is not disabled.

Once a claimant has established, as plaintiff has established in the case before us, that he is unable to return to his former work, the Secretary bears the burden of demonstrating that the claimant is capable of performing work that exists in the national economy. *Ferguson v. Schweiker,* 765 F.2d 31, 36 (3d Cir.1985). The Secretary may sustain his burden in some circumstances by relying upon the medical-vocational guidelines. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). But "[i]f an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered."

*Id.* at 1955 n. 5; *see also Kane v. Heckler,* 776 F.2d 1130 (3d Cir.1985).

We find that the ALJ's reliance on the medical-vocational guidelines in this case was erroneous as a matter of law, and that her finding of non-disability was not based on substantial evidence.

■ *Evidence of pain.* First, the ALJ erred by disbelieving the evidence regarding plaintiff's chronic pain—a non-exertional limitation that renders use of the medical-vocational guidelines inappropriate. *Green v. Schweiker,* 749 F.2d 1066, 1067, 1072 (3d Cir.1984). The medical evidence in this case is overwhelming that plaintiff experiences consistent and severe pain. Plaintiff's treating neurologist, and the two consultants who examined plaintiff most frequently, found on the basis of laboratory tests that there was a physical basis for plaintiff's reported pain. The views of a claimant's treating physician are entitled to great weight. *Rossi v. Califano,* 602 F.2d 55, 58 (3d Cir.1979); *Bryant v. Schweiker,* 537 F.Supp. 1, 2 (E.D.Pa.1982).

■ In this case, in fact, the ALJ cited *no* medical evidence in support of her rejection of plaintiff's claim that he experienced severe pain. The ALJ simply stated that "[i]t is difficult to believe that the claimant has suffered the degree of pain alleged for this extended period of time without having had more aggressive treatment possibly including surgery." It is not for the ALJ to substitute her judgment for that of the claimant's treating physician, *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979), particularly as to the appropriate treatment of the claimant's medical condition, *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir.1983).

■ There is evidence on the record that plaintiff was reluctant to undergo surgery. But there is no evidence on the record that plaintiff's treating physician, or the neurosurgeon to whom plaintiff was referred by his treating physician, ever affirmatively concluded that surgery was indicated. Failure to follow a prescribed plan of treatment may be grounds for denial of benefits. 20 C.F.R. § 416.930. But the ALJ did

not invoke this regulation, nor, we find, would a denial of benefits on that ground have been supported by substantial evidence.

The ALJ is silent as to what other "more aggressive treatment" plaintiff should have undergone. There is evidence on the record that plaintiff's symptoms had a "functional overlay," and that his fear of pain may have made him less responsive to treatment than he might otherwise have been. But these are not grounds that would permit the ALJ to disbelieve testimony and medical evidence as to plaintiff's pain. Rather, the evidence serves to explain to some extent the conservative nature of plaintiff's treatment.

■ *Residual functional capacity.* Second, the Secretary's finding that plaintiff is capable of performing the full range of sedentary work is not based upon substantial evidence. The three physicians who saw plaintiff most frequently, Dr. Reznak, Dr. Nardini, and Dr. Shankar, all concluded that plaintiff's condition rendered him disabled to do any work. Another physician, Dr. Thakarar, also noted that plaintiff could not engage in prolonged sitting or standing. This observation is corroborated by plaintiff's own testimony and by the observations of Social Security Administration interviewers. Tr. 96, 135–36. Furthermore, there is unrefuted evidence on the record that plaintiff required emergency medical treatment and was eventually hospitalized after two days of performing bench work requiring constant sitting and occasional lifting of up to ten pounds. Under 20 C.F.R. § 416.967(b), a claimant who is unable to sit for long periods of time is deemed incapable of doing sedentary work.

In addition, plaintiff is on pain medication that makes him drowsy. The ALJ, without any basis in evidence on the record, substituted her own judgment for that of plaintiff's physicians by suggesting that plaintiff could cut down on his use of pain medications. Even so, the ALJ acknowledged that drowsiness would prevent plaintiff from working around moving machinery.

Plaintiff's inability to sit for long periods and his drowsiness both diminish the number of "sedentary" jobs, if any, that plaintiff would be able to perform. "[A]pproximately 85 percent of [sedentary] jobs are in the machine trades and benchwork occupational categories." Appendix 2 to Subpart P, § 201.00(a). This is precisely the kind of work plaintiff attempted to do, with dire results. "A finding of disabled is not precluded for those individuals under age 45 . . . who do not have the ability to perform a full range of sedentary work." Appendix 2 to Subpart P, § 201.00(h).

Without the support of the testimony of a vocational expert, the ALJ asserted that "[m]ost jobs, even of a sedentary nature have periodic breaks when an individual can stand and walk around briefly," and that as a result plaintiff's ability to "sit, stand or walk up to two hours each in an eight hour day" meant that plaintiff has the residual capacity to do a full range of sedentary work. Were there substantial evidence on the record to support the ALJ's assertion that periodic brief breaks would be sufficient to permit plaintiff to do sedentary work, the appropriate course would be to remand this case to the Secretary to permit the taking of evidence from a vocational expert as to whether plaintiff's limitations would permit him to perform a substantial range of sedentary work. *Santise v. Schweiker,* 676 F.2d 925, 935 (3d Cir. 1982). We find, however, that the ALJ's assertion as to what would be adequate to meet plaintiff's needs is utterly unsupported by evidence on the record. As a result, we do not find it necessary to reopen the record to consider the views of a vocational expert.

We conclude that the ALJ's determination that plaintiff is not disabled is not based upon substantial evidence. We shall grant plaintiff's motion for summary judg-

ment and remand this case to the Secretary for calculation and award of benefits.[3]

An appropriate order is appended.

**3.** We shall also deny the Secretary's motion to dismiss for lack of prosecution due to delay in submitting briefs.