Carl L. **LIVESAY** Plaintiff,

v.

Kenneth S. **APFEL,** Commissioner of Social Security, Defendant.

No. CA-97-834.

United States District Court, E.D. Virginia, Richmond Division.

Oct. 29, 1998.

---

Carl L. Livesay, Richmond, VA, pro se.

Debra Jean Prillaman, Office of Atty. Gen., Richmond, VA, for defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

The plaintiff, Carl L. Livesay ("Livesay"), proceeding *pro se* and *in forma pauperis* filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to contest the final decision of the Commissioner of Social Security (the "Agency"). The Agency found that: (i) Livesay was not entitled to disability insurance benefits ("DIB") because he was not disabled before the expiration of his disability insurance; but that Livesay (ii) was eligible for Supplemental Security Income ("SSI") as of September 14, 1992 because he was "disabled" as de-

fined by Section 1614(a)(3)(A) of the Social Security Act and (iii) the disability continued until the time of the Agency's decision. The Agency predicated its decision on those issues on the finding that Livesay did not meet the definition of a disabled person until September 14, 1992, when he was hospitalized for a severely infected foot and was diagnosed with diabetes mellitus and other diabetes related maladies.

The parties filed cross-motions for summary judgment; and, on June 16, 1998, United States Magistrate Judge G. Warthen Downs issued a Proposed Memorandum Opinion, holding that the final decision of the Agency was supported by substantial evidence. Summary judgment was granted in favor of the Agency. Livesay filed objections to the Proposed Memorandum Opinion. For the following reasons, the objections are overruled and the Proposed Opinion is approved and shall be entered as the final decision of this Court.

## PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

Livesay, a 54 year old mining engineer, testified that the last position which he held was that of a principal engineer who was charged with redesigning mine plants. Livesay has not worked since 1986. (R. at 38). Livesay also testified that he has suffered from many diabetic symptoms such as leg sores on his legs, frequent urination and tiredness since 1986. (R. at 49). He has poor vision in the right eye and total blindness in the left eye, (R. at 19), and he is an insulin dependent diabetic who requires injections twice a day. (R. at 43).

Livesay alleged that, on April 3, 1989, he suffered what he characterized as a "silent" heart attack, an episode in which Livesay alleged that he experienced sharp chest pains, an inability to walk, and shortness of breath. (Pl. Complaint at 1). After this "silent" heart attack, Livesay claimed that he was unable to work. (R. at 95).

However, Livesay did not seek medical attention until September, 1989 when he complained of chest pains on his left side and went to the Retreat Hospital emergency room. (Pl. Sum. Jud. Mot. at 2). While hospitalized on that occasion, doctors advised Livesay that had high blood sugar and that he should be evaluated for possible diabetes. (Pl. Sum. Jud. Mot. at 2). Livesay took no action on that medical advice.

Then, on September 14, 1992, Livesay was admitted to the hospital for a severely infected right foot. His hospital stay was three weeks. (Pl. Sum. Jud. Mot. at 2). At this point, Livesay was diagnosed with diabetes mellitus. (Pl. Sum. Jud. Mot. at 2).

On June 15, 1994, Livesay applied for DIB and SSI under the Social Security Act. Livesay claimed that he was disabled as of April 4, 1989 because of diabetes (R. at 95). Livesay later applied protectively for DIB and SSI on the basis of his heart problems.

Livesay saw his regular physician, Dr. John M. Daniel, on August 1, 1994. Dr. Daniel told Livesay to better manage his diabetes and recommended that Livesay increase the level of insulin. (R. at 124). Then, on September 8, 1994, Livesay was examined by Dr. Hamid Al–Abdulla. Dr. Al–Abdulla diagnosed Livesay to have diabetes mellitus, probable diabetic neuropathy of the legs, possible diabetic retinopathy and obesity. In February, 1995, Livesay underwent a series of tests which evidenced a heart problem. As a result, Dr. Peter S. Ro performed a heart catheterization which showed blockage in the coronary artery. (Pl. Sum Jud. Mot. at 3).

On February 16, 1995, Dr. Thomas Christopher performed coronary bypass surgery on Livesay. (Pl. Sum. Jud. Mot. at 3). On March 27, 1995, Dr. Daniel wrote a letter to the Social Security Administration informing it of the bypass surgery and advising that, because Livesay's

recovery was going slowly, he would be unable to work until he was fully recovered. (R. at 144).

On March 19, 1996, an ALJ determined that Livesay was ineligible for DIB but that he was entitled to SSI from the date of September 14, 1992, the date Livesay was hospitalized for the foot infection. Livesay was advised that there was no disability before December 31, 1990, the date which the disability insurance was to expire. Livesay disputed the ALJ's decision citing the fact that the ALJ had failed to take all of the medical evidence into account and had not considered the "silent" heart attack that Livesay allegedly suffered on April 3, 1989.

Livesay appealed the decision to the Appeals Council; however, the Appeals Council denied the request for review of the Agency's decision on September 11, 1997. (R. at 2). The Appeals Council concluded that there was no basis for granting the request for appeal because there was no abuse of discretion, there was no error of law, the ALJ's conclusions were supported by substantial evidence and there was no broad procedural issue or public interest at issue. (R. at 2).

In Livesay's request for review, he stated that the medical reports of Drs. Ro, Christopher, Bladengroen, and Daniel were not included in his file at the hearing. (R. at 6). In addition, Livesay stated that the records from the Retreat Hospital Emergency Room were not considered in his hearing. (R. at 6). He provided summaries of what his doctors and the test concluded but did not provide any actual records or reports. The Appeals Council stated that the additional contentions brought by Livesay did not provide a sufficient basis for review. (R. at 2).

Livesay then filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Agency's final decision to deny his claim for DIB and its decision to deny SSI benefits before September 14, 1992. On June 16, 1998, United States Magistrate Judge G. Warthen

Downs filed a Proposed Memorandum Opinion concluding that the Agency had based its decision on substantial evidence and granting the Agency's motion for summary judgment. Livesay filed objections to the Magistrate Judge's Proposed Memorandum Opinion. The thrust of his objections is that the Agency did not take all of the evidence into account. Thus, the issue is whether the decision of the Agency was supported by substantial evidence.

## DISCUSSION

### A. Standard of Review

█ Under 42 U.S.C. § 405(g), "the Agency's findings of any fact, if supported by substantial evidence, shall be conclusive, . . ." See 42 U.S.C. § 405(g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Section 405(g) makes clear that the Court may not engage in de novo review and must uphold the Agency's decision so long as it is supported by "substantial evidence." See id. Thus, the court has a narrow role in reviewing such administrative decisions under § 405(g). Id. It is charged with determining whether the Agency had substantial evidence to make such a determination.

The plaintiff must meet a heavy burden to sucessfully prove that the Agency made an improper decision because substantial evidence is defined to mean ". . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Id. (citing Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966)).

### B. The Merits of the Case

#### 1. Definition of Disabled

█ Livesay claimed that he has been disabled since he experienced his "silent"

heart attack on April 3, 1989. For the purposes of DIB and SSI,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, . . .

42 U.S.C.A. § 423(d)(2)(A), 1382c(a)(3)(B)(1998). The claimant has the burden to demonstrate that he has a disability as defined in order to receive benefits. *See Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

### 2. Disability Insurance Benefits

■ To receive DIB, Livesay must demonstrate that he met the definition of a disabled individual before the date his disability insurance expired, December 31, 1990. (Pl. Complaint at 1). Although Livesay testified that he has not worked since 1986 (R. at 38), there is no medical evidence that his physical condition was such as to preclude him from engaging in some sort of gainful work or, for that matter, in his previous line of work. Livesay claims that his "silent" heart attack prevented him from working. However, this "silent" heart attack occurred three years after Livesay stopped working and, in any event, no one diagnosed a heart problem until February, 1995, four years after the disability insurance expired.

In challenging the ALJ's decision, Livesay has attempted to produce new evidence to demonstrate that he met the definition of disability on and after April 3, 1989. The Agency argued that this new evidence does not demonstrate that, as a result of his various maladies, Livesay suffered impairment which was sufficiently severe to preclude him from engaging in his previous work or other substantial gainful work. The new evidence that Livesay included in his addendum to his motion for summary judgment did not show that he had heart problems in April,

1989. The EKG dated March 9, 1995 and the one dated September 14, 1992 may have demonstrated that there was a previous heart attack but they do not prove that heart disease had developed as early as April 1989 or that Livesay suffered a heart attack on April 3, 1989. Livesay was not diagnosed with diabetes or diabetes related maladies until September 14, 1992. His disability insurance expired on December 31, 1990. Therefore, Livesay failed to prove that he was disabled for purposes of receiving DIB as of April 3, 1989 either because of heart disease or diabetes.

### 3. Supplemental Security Income

■ Livesay objected to the ruling that he was entitled to SSI only from September 24, 1992 forward. The ALJ concluded that Livesay suffered from severe insulin-dependent diabetes, and that, as a result, he exhibits diabetic neuropathy and retinopathy, and has lost vision in his left eye. (R. at 20). The ALJ also found that, since February 1992, Livesay has suffered from coronary artery disease which was treated by bypass surgery. (R. at 20). Although Livesay's complaints of various health problems were supported by medical evidence after September 14, 1992, (R. at 20), there is no proof of impairment before that date.

The record shows that, before September 14, 1992, Livesay was able to lift weights of more than ten pounds and walking more than occasionally. (R. at 20). The vocational expert, Robert Jackson, characterized Livesay's previous work as a mining engineer as skilled sedentary work, and that Livesay's skills such as record keeping, report writing, advanced mathematics, observational skills and problem solving abilities involved in his work as a mining engineer were transferable to other types of jobs. (R. at 55–56). Taking into account Jackson's testimony as well as the symptoms that Livesay had, his impairment was not severe until September 14, 1992. Non-severe impairment is an impairment or a combination of impairments

that does not significantly limit the mental or physical ability to do basic work activities. *See* 20 C.F.R. § 404.1521 (1998). Therefore, Livesay was not disabled within the applicable definition which defines a person as disabled only if the impairment makes an individual unable to perform his previous work or any other kind of substantial gainful works present in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B). Clearly, the record contains substantial evidence that Livesay had the ability to engage in other work that would require the skills he possessed.

### 4. New Evidence

 Livesay objects to the Magistrate Judge's Proposed Memorandum Order because of the new evidence which he provided in his summary judgment motion. The fact that this new material was not addressed at the first hearing does not necessarily make this case ripe for remand. 42 U.S.C. § 405(g) states that,

> [the court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). Thus, the district court has discretion on whether to remand a case in light of new evidence.

In his opposition to the motion for summary judgement, Livesay tenders two EKG printouts. However, those documents do not prove that Livesay had a heart condition before December 31, 1990 because they were dated September 14, 1992 and March 9, 1995, respectively.

Livesay also sought to introduce evidence from Dr. Thomas Christopher, the cardiac surgeon who performed the bypass surgery on February 16, 1995. Dr. Christopher observed new arteries forming within scar tissue which led him to believe that Livesay had suffered a previous heart attack. Livesay contends that Dr. Christopher's testimony shows that Livesay's disability stemmed from the April 3, 1989 "silent" heart attack. No doubt the evidence offered by Dr. Christopher shows previous damage to Livesay's heart, likely caused by a heart attack. But, the testimony does not prove that the heart attack occurred before the expiration of Livesay's disability insurance.

In contesting the Agency's ruling, Livesay also offered the records from his September 23, 1989 visit to the Retreat Hospital emergency room. The medical records showed a high sugar count. This sugar count does not necessarily place Livesay within the definition of disability even if this event was one of the primary events leading to diabetes. Nor does the records of the medical examination by Dr. Al-Abdulla help prove Livesay's contention.

### CONCLUSION

The Agency's decisions that Livesay was ineligible for DIB and that he was not entitled to SSI until after September 14, 1992 were supported by substantial evidence. Therefore, the objections to the Proposed Memorandum Opinion raised by Livesay are overruled. The Proposed Memorandum Opinion is affirmed and shall constitute the final decision of this Court.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that the objections to the Proposed Memorandum of the United States magistrate judge are OVERRULED, the defendant's Motion for Summary Judgment is GRANTED, the plaintiff's Motion for Summary Judgment is DENIED, and this action is DISMISSED.

The District court's decision may be appealed to the United States Court of Ap-

peals for the Fourth Circuit by filing with the Clerk of this Court a petition for leave to appeal stating specific objections to the judgment within Sixty days from the date of entry hereof. Fed. R.App. P. 3.1; 28 U.S.C. § 636(c)(4), (5).

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.