**Lucille A. MAYORAL, Plaintiff,**

v.

**Jo Anne BARNHART, Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A.01–K–1974.**

United States District Court, D. Colorado.

March 4, 2003.

Peter Sprackling Komlos–Hrobsky, Legal Aid Society of Metro Denver, Denver, CO, for plaintiff.

Yvette G. Keesee, Social Sec. Admin., Office of General Counsel, Denver, Co, for defendant.

## ORDER REMANDING CASE FOR DE NOVO HEARING

KANE, Senior District Judge.

Plaintiff Lucille Mayoral filed this action seeking review of the Commissioner's denial of her claim for social security disability benefits. In a written decision issued in September 2000, the administrative law judge determined that Mayoral, while suffering from impairments that include inflammatory arthritis and lumbar radiculitis, could return to her past work as a quality control clerk and was therefore not disabled. Mayoral contends this conclusion was premised on an incorrect application of the relevant legal standards and not supported by substantial evidence. Specifically, Mayoral contends the ALJ's determination that she was "not entirely credible in light of the reports of the treating and examining practitioners" ran afoul of Tenth Circuit jurisprudence governing credibility determinations in social security proceedings in that the reasons offered were conclusory and based on negative inferences and speculation rather than specific evidence in the record.

I agree with Mayoral, but find the record developed during the administrative proceedings inadequate to have supported a determination of her impairments and ability to return to past relevant work in the first instance. The possibility that Mayoral's physical impairments, leg pain and fatigue might also be reflecting the onset of post-polio syndrome was identified as a significant concern by Mayoral's treating physician during the course of the administrative process. Twice during the fall of 1999 the physician recommended further evaluation of post-polio syndrome, yet Mayoral appeared at the August 2000 hearing without having had such further evaluation.[1]

Given the significance of a diagnosis of post-polio syndrome to a determination of Mayoral's claim, its identification as a concern only after administrative proceedings were already underway, and the fact Mayoral proceeded throughout unrepresented by counsel, I find the ALJ had an affirmative duty to develop the record in this regard. I therefore reverse and remand the case for a *de novo* hearing to include examination and evaluation of Mayoral's alleged post-polio syndrome.

## STANDARD OF REVIEW.

In order to determine whether a claimant is under a disability, an ALJ applies a five-step inquiry: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988). "If at any point in the process the [ALJ] finds that a person is disabled or not disabled, the review ends." *Gossett v. Bowen,* 862 F.2d 802, 805 (10th Cir.1988). In this case, the ALJ terminated the review at step four by concluding that while Mayoral had a "severe impairment or combination of impairments," she "retains the residual functional capacity to perform her past relevant work as a quality control clerk." (R. 14.)

---

1. The ALJ relied on Mayoral's failure to follow up on her doctor's recommendation to conclude Mayoral's "alleged" post-polio syndrome was "not a severe impairment." (R. 14–15.)

■ Under the applicable legal standard, I must review the ALJ's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994). Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). In order to determine whether a decision is supported by substantial evidence, I must meticulously examine the record. I may not, however, reweigh the evidence or substitute my own discretion for that of the ALJ. *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## DISCUSSION.

### Credibility Determination.

Mayoral appeared before the ALJ for her administrative hearing on August 3, 2000. She was unrepresented, thus her testimony was elicited by the ALJ in a series of questions posed by him. At the conclusion of her testimony, the ALJ thanked Mayoral and told her she "[came] across as very credible and very sincere." (R. 159.) In his written decision, however, the ALJ found Mayoral's testimony "not entirely credible in light of the reports of the treating and evaluating practitioners." (R. 17, 19.) The ALJ's findings regarding Mayoral's credibility are set forth in full at page 5 of his September 8, 2000, decision. I quote them in their entirety here:

> Ms. Mayoral's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the reports of the treating and examining practitioners. No physician has precluded all work activity for the claimant. Her treating physician [Dr. Strickland] placed no work related restrictions on her and the consultative

examining physician placed restrictions consistent with light work activity. The claimant takes no pain medication for her allegedly disabling pain and has received little treatment very sporadically. If the claimant were as limited as she alleges, the undersigned would expect her to seek treatment to restore her ability to work. In addition, her description of her symptoms at the hearing is inconsistent with the statements she made to her doctor. Contrary to her testimony at the hearing, treatment notes state that the claimant is able to do most of the housework and the shopping. The Administrative Law Judge finds these inconsistencies reflect poorly on the claimant's overall credibility.

(R. at 17.)

"It is well settled that administrative agencies must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir.1988). Here, it appears the ALJ patterned his findings directly after the admonition in *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir.1993) that ALJs evaluating the credibility of claimants' testimony regarding pain and disability consider "levels of medication and their effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of medical contacts, the nature of daily activities ... and the consistency of compatibility of nonmedical testimony with objective medical evidence." Based on my review of the record, it appears that while the ALJ applied these factors, he did so in an exceedingly inexact and conclusory way, relying on vague characterizations of the evidence (and lack of evidence) to equivocate that Mayoral was "not entirely credible."

For example, the ALJ states Mayoral "takes no" pain medication for her "allegedly disabling pain." (R. 17.) The record, however, clearly states that Mayoral took Ibuprofen and Carisprodol (Soma), a mus-

cle relaxer, for her back pain. (R. 74, 77.) The ALJ himself acknowledged this at the hearing when he reminded Mayoral when she testified she was taking a "muscle relaxer" that the muscle relaxer was "Soma." (R. 144.) Further, Mayoral testified that her doctors offered to prescribe her stronger pain medications "like Valium," but that she demurred because she did not want to "depend on a pill to survive." (R. 144.) The fact that Mayoral apparently opted to tolerate less-than-complete pain relief in order to avoid the side effects and dependency concerns associated with stronger pain medications does not support an inference that her pain testimony was "not entirely credible."

 Similarly, the ALJ's statement that "no physician has precluded *all* work activity" as support for a determination that Mayoral was less than credible (R. 17) is also selective and misleading. While it is technically accurate to say Dr. Strickland did not place Mayoral on work restrictions, it is abundantly clear from his January 9, 2000 report that he was not affirmatively stating Mayoral could return to work. (R. 95.) Rather, with respect to Mayoral's request for a statement about being able to work, Dr. Strickland wrote "I thought she positively should engage in a work program, and they were to evaluate her on the amount of weight she can lift, and work, through this program." (R. 94.) He stated that Mayoral "did go [d]o that," but reiterated that Mayoral continued "to have a considerable amount of difficulty as I stated, and she is having marked difficulties both with stance and ambulation involving especially her lower extremities." (*Id.* at 95.) Dr. Strickland proceeded again to express his concern that Mayoral "may be developing a post-polio syndrome causing all this pain in the lower extremities, and the marked fatigue and dizziness that she is experiencing also." *Id.* He concluded that "there could [also] be a definite problem involving her low back as

well as her neck, [from] the previous auto accident injury." *Id.* In light of the actual record, the inference drawn by the ALJ— i.e., that Mayoral's testimony regarding her inability to return to her past relevant work was less than credible given the failure of her treating physician to say she was precluded from "all" work activity—is unsupported by substantial evidence.

 "Credibility determinations are peculiarly the province of the finder of fact, and [I] will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988). Here, the link between the evidence and credibility determination is missing. *See Kepler* at 391 ("all we have is the ALJ's conclusion").

With respect to the specific issue of pain, the ALJ's credibility assessment ignored written observations of her treating and examining physicians and glossed over any meaningful consideration of Mayoral's subjective pain testimony under the framework set out in *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987) and its progeny. *See Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995). In his January 2000 report, Dr. Strickland noted Mayoral required a "considerable amount of care" when he first saw her in September 1999. (R. 93.) He stated she had "severe pain involving both hands" and "severe pain involving her knees." (*Id.*) On examination, he noted "[Mayoral] had a considerable amount of pain to deep palpation [sic] and motion of all of the areas that she complained of." (*Id.*) "She wants to work," he stated, "but she says that she just has too much pain to work." In addi-

tion to Dr. Strickland's report, the objective basis for a claim of disabling pain is set forth in the November 1999 report of consulting/examining physician Dr. McDonough. (R. 89) ("Since 1991 [Mayoral] has had recurring pain and swelling of her knees, more recent pain in both hips, ankles, and feet, as well as the neck.").

■ "Once an objective medical basis for the existence of pain has been shown, subjective evidence must be given at least some weight and cannot be disregarded or minimized into nonexistence." *Williams,* 844 F.2d at 754. Other than to allow, by implication, that Mayoral's testimony may have been somewhat credible, i.e., only "not entirely credible," there is no indication in his written decision that the ALJ gave any weight to Mayoral's subjective pain testimony.

For this reason, in addition to the lack of substantial evidence in the record to support the ALJ's credibility findings above, the ALJ's decision is subject to reversal. In conjunction with the failure in this case to develop the record on the issue of Mayoral's possible post-polio syndrome, both reversal and remand for a new hearing is appropriate.

### *Post–Polio Syndrome.*

■ The cornerstone of any standard of review requiring deference to an agency's findings of fact is that those findings were made on a complete and accurate record. *See generally, Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1575 (10th Cir.1994). Because social security hear-

ings are nonadversarial proceedings, an ALJ "has a basic duty of inquiry 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987)(quoting *Heckler v. Campbell,* 461 U.S. 458, 471, 471 n. 1, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)(Brennan, J., concurring)). That duty is heightened when a claimant is unrepresented. *Id.*

■ Here, the content and timing of Dr. Strickland's January 2000 report is dispositive. The report, dated January 9, 2000 and describing Dr. Strickland's treatment of Mayoral during the fall of 1999, describes Dr. Strickland's growing concern that Mayoral's lower extremity pain, fatigue, difficulty with ambulation, and pain associated with standing might be from the onset of post-polio syndrome.[2] (R. 94.) While he noted no "marked involvement," Dr. Strickland stated "[i]t is very important that [Mayoral] did [have] polio at two years of age and she had to wear braces on both legs for a considerable interval of time." *Id.* "Please note," he wrote at the end of his report, "that I am concerned about this post-polio syndrome and I do think that this should be evaluated." (R. 95.) He concluded by saying

> [Mayoral] is having marked difficulties both with stance and ambulation involving especially her lower extremities. I think this could be directly related to the braces she wore when she did have polio. She may be developing a post-polio syndrome causing all this pain in

2. Postpoliomyelitis, or "post-polio syndrome," is a condition "characterized by muscle fatigue and decreased endurance, often accompanied by weakness, fasciculations, and atrophy in selective muscles. The syndrome occurs many years after an attack of paralytic poliomyelitis, affecting especially older and initially more severely involved patients." *The Merck Manual* 2183 (16th ed.1992). It is a listed impairment, appear-

ing as "anterior poliomyelitis" at 20 C.F.R. Part 404, Subpart P, App. 1 § 11.11, and is described in terms of relative degree of interference with locomotion and/or interference with the use of fingers, hands and arms. *Id.* at § 11.00C. The Secretary has issued guidelines specifically dealing with post-polio syndrome in the Program Operations Manual System (POMS). *See generally Barron v. Sullivan,* 924 F.2d 227 (11th Cir.1991).

the lower extremities, and the marked fatigue and dizziness that she is experiencing also.

*Id.* Under the circumstances of this case, I conclude the ALJ had an affirmative obligation to develop the record to include such further evaluation of post-polio syndrome before denying Mayoral's claim.

The final decision of the Commissioner of Social Security is REVERSED, and the case is REMANDED for a new hearing before a different ALJ to include a full examination and evaluation of claimant's potential post-polio syndrome.