**Debra MILLER, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**No. 05 Civ. 9674 (WCC).**

United States District Court,
S.D. New York.

March 5, 2008.

Law Office of Carol S. Goldstein, Carol S. Goldstein, Esq, of Counsel, Monroe, NY, for Plaintiff.

Michael J. Garcia, United States Attorney for the Southern District of New York, Susan J. Baird, Ass't United States Attorney, of Counsel, New York, NY, for Defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

This is an action brought by plaintiff Debra A. Miller pursuant to Title II of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), to review the final determination of defendant Jo Anne B. Barnhart, Commissioner of Social Security (the "Commissioner"), determining that plaintiff was not disabled as defined by the Act from March 15, 2002 to September 2, 2003, and therefore is not entitled to disability insurance benefits. Plaintiff has moved, and the Commissioner has cross-moved, for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c). We have reviewed the record and conclude, for the reasons stated below, that the Commissioner's determination is supported by substantial evidence. Accordingly, defendant's cross-motion for judgment on the pleadings is granted and

her decision is affirmed, and plaintiff's motion is denied.

### BACKGROUND

### I. *Procedural History*

Plaintiff filed an application for a period of disability and disability insurance benefits on December 17, 2002, alleging an inability to work beginning March 15, 2002 due to a back disorder (discogenic & degenerative), under Title II of the Act (42 U.S.C. § 401). (Tr. 13, 21–22.)[1] The Social Security Administration ("SSA") denied the application on February 19, 2003, and plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.* 13, 25, 27.) A hearing was held before ALJ Dennis G. Katz on August 13, 2004. (*Id.* 13, 40.) In a decision on September 10, 2004, ALJ Katz determined that plaintiff was not entitled to a period of disability and disability benefits as she was not disabled under § 216(I) and § 223. (*Id.* 21.)

Plaintiff then filed an appeal with the Office of Hearings and Appeals. The Appeals Council denied plaintiff's request for review on September 23, 2005, making the ALJ's decision the final decision of the Commissioner. (*Id.* 6.)

### II. *Plaintiff's Personal History and Testimony*

Plaintiff is 44 years old. (*Id.* 22.) She is married with two children. (*Id.* 53, 65.) She has a Masters Degree in Education. (*Id.* 53.) She previously worked as an Accounts Receivable Administrator in Mahwah, N.J. from August 1990 to April 1993 and a classroom teacher in Florida, N.Y. from September 1993 to June 1997. (*Id.* 59.) She worked as a classroom

---

**1.** "Tr." refers to the consecutively paginated administrative record filed by the Commissioner as part of her answer.

teacher in the Ramapo Central School District, Sloatsburg, N.Y., from September 1997 through the time of her hearing with the ALJ. (*Id.*) At Ramapo she taught children ages 4–12, maintaining academic records and paperwork, setting-up and maintaining the "non-janitorial" aspects of the classroom, planning and setting-up lessons, maintaining all related academic materials, escorting children up and down stairs after each class approximately 10–12 times a day, attending meetings and conferences in and out-of the building, and performing "home prep" and grading of lessons. (*Id.* 71, 188.) She carried a laptop and workbag with books, folders and files, and moved stacks of books, overhead projectors and boxes of academic material; the heaviest weight she lifted was more than 70 pounds, with frequent lifting of 10 pounds. (*Id.* 71.)

Plaintiff injured her back at work on February 11, 2002 when she tripped over a student's books and fell. (*Id.* 15, 54.) Prior to this incident, she had two back surgeries, L4–L5, L5–S1 microdiscectomies in 1993 and 1995. (*Id.* 15, 53, 195.) Plaintiff continued working after the fall, but as of March 15, 2002 was unable to continue due to severe pain; she could no longer stand to teach the class and sitting was worse. (*Id.* 54; Pl. Mem. Supp. Mot. J. Pldgs. at 7.)

At the hearing plaintiff, who was represented by counsel, testified that she continued to be disabled although she had returned to work and was entitled to a "trial work period" and continued benefits. (Tr. 13.) After the surgery, she stated her recovery was slow, and she did not leave her bedroom except to go to the bathroom or kitchen until mid-August. (*Id.* 248.) The first meal she could sit down to was Thanksgiving 2002. (*Id.* 249.) She was driving herself to physical therapy after Thanksgiving as well, but therapy ended in January or February 2003. (*Id.* 249–50.)

She could drive about 5 minutes to the grocery store at that time. (*Id.* 250.) In the summer of 2003 she reported that things were getting better and she went to a few movies which she was able to sit through. (*Id.*) At the hearing she had her cane because she continued to use it in situations where she was not steady on her feet. (*Id.* 251.) At that time she was taking pain medication "[m]aybe once a week." (*Id.*) During the prior school year, however, she would take medication as "soon as I got home" and again "just before I went to sleep." (*Id.* 253.)

### III. *Medical History*

The plaintiff was treated by a number of medical sources, and her records were reviewed by several medical professionals. We provide her medical history in date order, but for the sake of clarity we will list here the medical professionals cited in the record. Plaintiff's treating physicians and back surgeons were Rudolph Taddonio, M.D. and Thomas A. Lansen, M.D. Her primary care treating physician was Francis Imbarrato, M.D. Her chiropractor was Dr. Howard Solab. Diagnostic tests were performed by Dr. Gregory Kizelshteyn. Plaintiff was also examined by John King, M.D., a consultive examiner for the SSA. Her records were reviewed by Judith Bodnar, M.D., a reviewing consultant for the SSA.

On April 15, 2002 Dr. Taddonio, (a treating physician and plaintiff's surgeon) began treating plaintiff for her back problems. (*Id.* 15, 195.) He noted that a recent MRI demonstrated degenerative disc disease and degenerative instability at L4–L5 and L5–S1, with discogenic sclerosis in the L–5/S–1 area. (*Id.*) On May 24, 2002 Dr. Kizelshteyn performed a discography; the discogram was positive at L4–L5 and L5–S1, and an MRI revealing degenerative changes and an abnormal CT

scan necessitated surgery. (*Id.* 15, 54, 109–11.) She underwent a two level decompressive lumbar laminectomy/fusion and instrumentation on July 12, 2002 with Drs. Taddonio and Lansen. (*Id.* 15, 54, 133.) On July 16, 2002 Dr. Lansen (a treating physician and plaintiff's surgeon) discharged plaintiff "ambulatory ... and [gave] careful instructions to maintain sedentary activity and not be involved in any vigorous physical activity, such as lifting, bending, climbing or the operation of machinery." (*Id.* 137.) Plaintiff began physical therapy after surgery. (*Id.* 16, 137.)

Dr. Taddonio saw plaintiff on August 5, 2002 and noted that plaintiff was "not really doing anything in the way of her own rehab." (*Id.* 189.) He noted that her neurologic exam was unchanged and there was no deterioration. (*Id.*) He recommended physical therapy and wanted her to "get going in terms of walking." (*Id.*) He did not think she could return to work until the first of the year and planned to re-evaluate her in January for that status. (*Id.*)

In October 2002, a physical therapist's report for Workers' Compensation indicated that plaintiff was wearing a body jacket and able to drive short distances, and her main complaint was stiffness and increased pain with long term sitting. (*Id.* 16, 175–76.) At that time, Dr. Taddonio reported that plaintiff was taking pain medication approximately once a week, feeling better and better, and was not wearing her brace around the house. (*Id.* 16, 188.) Plaintiff's straight leg raising was negative, she was able to heel and toe walk and her neurological exam was negative. (*Id.* 188.) X-rays showed early fusion forming at L4–L5 and L5–S1. (*Id.*) Dr. Lansen wrote to Dr. Imbarrato (a treating physician and plaintiff's primary care doctor) on November 19, 2002, stating plaintiff was doing "extremely well" in August but has not continued that good progress, she was

walking with a cane but still experiencing discomfort, particularly on exertion. (*Id.* 16, 237.) He noted that her neurologic examination remained substantially improved and she had improved relative to her preoperative status. (*Id.* 237.) He did not believe plaintiff could return to work at that time. (*Id.*) In a January 2003 report, having last seen plaintiff in November 2002, Dr. Imbarrato considered plaintiff to be "totally disabled" and, that given her job as a teacher, she "maybe [sic] a candidate for rehabilitation and re-vocational training." (*Id.* 16, 173–74.)

In January 2003 an aquatic therapy program was added to plaintiff's physical therapy because, although Dr. Taddonio found her neurologically normal, plaintiff was still experiencing pain on the right side of her low back and buttock, down the leg. (*Id.* 16, 55, 186.) Dr. Taddonio still considered her temporarily disabled from return to her work, although straight leg raising was negative and the surgery appeared successful because she was forming bone in her lumbar spine. (*Id.*) There were no specific findings on physical functioning limitations. (*Id.*) During this time, plaintiff's chiropractor, Dr. Solab, submitted a Disability Determination questionnaire to the SSA, in which he stated claimant could lift/carry up to 10 pounds, stand/walk for less than 2 hours, and sit for less than 6 hours per day. (*Id.* 16, 198–99.) He also noted that plaintiff's straight leg raise was positive at 40 degrees. (*Id.* 16, 197.)

On January 22, 2003, Dr. King, a consultive examiner for the SSA, opined that plaintiff could not lift over 10 pounds, could do no repetitive bending, stooping, kneeling, squatting or climbing, and could not sit for more than a half-hour at a time. (*Id.* 16, 204–05.) His exam revealed positive straight leg raising at 40 degrees, limited range of motion with pain, and a

limp on ambulation. (*Id.*) He also believed she should use a cane and should not stand or walk for more than one hour in an eight-hour period. (*Id.*) He noted that she could toe walk but was unable to heel walk and had a limp on ambulation. (*Id.* 205.) In February 2003 a Physical Residual Functional Capacity Assessment, issued by a reviewing consultant, John Stry, stated that plaintiff could occasionally lift/carry up to 10 pounds, sit for about 6 hours, and stand/walk for at least 2 hours in an eight-hour work day. (*Id.* 17, 209.)

In a March 2003 letter, Dr. Lansen reported that, while plaintiff was better, she continued to have sciatica with dysesthesia and "fairly severe low back pain." (*Id.* 238.) He noted she had good strength but positive straight leg raising at 60 degrees on the right side. (*Id.*) He felt that part of her pain was due to the physiotherapy and altered his recommendation to decrease the physiotherapy. (*Id.*) In April 2003 Dr. Taddonio noted plaintiff still had pain in her back, especially on the right side, and shooting leg pain. (*Id.* 55, 226.) She was still on medication, attempting to wean herself off. (*Id.* 226.) He reported she could heel/toe walk, had good balance although she said she lists over to the right, had no motor weakness, and the straight leg raise produced pain at 80–85 degrees. (*Id.*) He recommended she "get herself on an exercise bicycle" and do aquatic therapy. (*Id.*) Plaintiff felt she could not return to work and Dr. Taddonio stated: "I would also agree at this point. She is a school teacher. Hopefully we can get her back in September." (*Id.* 226.)

Dr. Taddonio reported continued improvement in July 2003, noting that plaintiff reported only occasional back pain, fatigue only at the end of the day and some symptoms in her legs. (*Id.* 17, 225.) She could heel and toe walk, although heel walking hurt her back, she was neurologically intact, had limited range of motion at 50% and had negative straight leg raising. (*Id.*) On September 9, 2003, Dr. Taddonio released plaintiff to work with no stair climbing, no walking on unpaved and uneven surfaces, and no lifting more than 10 pounds. (*Id.* 55, 224.) On December 23, 2003 Dr. Taddonio noted that plaintiff continued to have pain in her back and lower extremities. (*Id.* 223.) She had limited range of motion, could toe walk but heel walking was difficult, and had negative straight leg raising. (*Id.*) He noted that she returned to work and was exhausted when she got home at night. (*Id.*) He stated that "she has not reached maximum medical improvement until we have settled the question of whether or not she has a solid fusion or not." (*Id.*)

The above evidence is considered and analyzed in the ALJ's report. Based on this evidence, he concluded that plaintiff was able to perform sedentary work prior to March 15, 2003, and was therefore not eligible for disability insurance benefits. Plaintiff challenges the decision of the Commissioner as not supported by substantial evidence and as contrary to Social Security law.

## ANALYSIS

### I. *Standard of Review*

A court's review of the ALJ's decision regarding disability benefits is limited to determining whether the decision is based on correct legal principles and is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (stating that it is not the function of the court to determine disability *de novo;* rather the court is limited to determining whether the Commissioner's conclusions are based on an erroneous legal standard or supported by substantial evidence). Accordingly, a court reviewing a final decision by the

Commissioner must first determine whether the correct legal standard was applied. *See Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). If the Commissioner failed to apply the correct legal standard in making a determination, the reviewing court must not defer to the Commissioner's decision. *See Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

 If the correct legal standard has been applied, the court must determine whether the decision was supported by substantial evidence. *See Tejada,* 167 F.3d at 773. Substantial evidence in this context has been defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record. *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam). Where substantial evidence exists to support the Commissioner's final decision, that decision must be upheld, even where substantial evidence supporting the claimant's position also exists. *See generally Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). The role of the reviewing court is therefore "quite limited and substantial deference is to be afforded the Commissioner's decision." *Burris v. Chater,* 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996).

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an "anatomical, physiological, or psychological abnormalit[y] . . . demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). Further, such a disability will be found only if it is determined that the individual's "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Regulations of the Commissioner set forth a five-step analysis that must be used in evaluating a disability claim. *See* 20 C.F.R. § 404.1520(a)(4).

The Court of Appeals for the Second Circuit has described this five-step process as follows:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical capacity to do basic work activities.

3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, with-

out considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work, which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Carrington v. Barnhart*, 2005 WL 2738940, at \*5 (S.D.N.Y. Oct. 19, 2005) (quoting *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000)). The claimant bears the burden of proof on all elements except the final one. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir.2000). If the claimant satisfies this burden and thereby establishes a prima facie case, the burden shifts to the Commissioner to prove the fifth element. *See Carrington*, 2005 WL 2738940, at \*5 (citing *Rivera v. Schweiker*, 717 F.2d 719, 722–23 (2d Cir.1983)).

▮ In examining a disability claim under the five-step analysis, the Commissioner is required to examine the following four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur*, 722 F.2d at 1037 (citations omitted). Moreover, in assessing medical evidence, the ALJ must distinguish between treating and non-treating physicians and lend a treating physician's opinion "controlling weight when that opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not incon-

sistent with the other substantial evidence. . . .' " *Carrington*, 2005 WL 2738940, at \*6 (quoting 20 C.F.R. § 416.927(d)(2)).

## II. *The ALJ's Analysis*

The ALJ considered the testimony and documentary evidence in the record to determine whether plaintiff was disabled, when the disability began and how long it lasted, and whether the disability insured status requirements of the Act were met.

▮ Under the first step the ALJ determined that since plaintiff was working full-time as a teacher as of September 2, 2003 she was engaged in substantial gainful activity. (Tr. 14.) This does not in and of itself disqualify an application because a person otherwise considered disabled may be eligible for a "trial work period." (*Id.*) A claimant's eligibility for a trial work period turns on whether she is entitled to disability benefits prior to that period. (*Id.*) Because the ALJ determined that plaintiff was not prevented from performing substantial gainful activity for any 12–month period of time in that her medical condition gradually improved from the date of her injury, she was not disabled under the Act, and therefore was never eligible for a trial work period. (*Id.* 15.) Therefore the ALJ's disability analysis was for the period from March 15, 2002 until September 2, 2003. (*Id.*)

Plaintiff was diagnosed with a severe back impairment; however, the ALJ found that it did not meet the clinical criteria of any impairment contained in the Listings, Appendix 1, Subpart P, and Regulations No. 4 ("Listings"). (*Id.* 15.) Because plaintiff did not meet the Listings criteria, the ALJ had to determine whether she was capable of performing "past relevant work" by assessing her residual functional capacity considering all relevant evidence. (*Id.*; 20 C.F.R. § 404.1520(e).) Based on

consideration of the record and plaintiff's testimony, the ALJ determined that plaintiff could sit for up to and including 6 hours, could stand/walk for up to and including 2 hours in an eight-hour work day, and could lift/carry up to and including 10 pounds, but could not bend, stoop or climb stairs more than occasionally or walk on uneven surfaces. (Tr. 19.) He concluded that she retained the residual functional capacity to perform sedentary work.[2] (*Id.*) However her past relevant work as a teacher, as described by her, required more than sedentary exertion and she was therefore unable to perform her past relevant work. (*Id.* 20.) The ALJ next considered plaintiff's age (38–40 years old), education (Master's Degree in Education) and residual functional capacity (sedentary work level) and determined that she was not disabled under the Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.28 and 201.29). (*Id.*)

### III. *Substantial Evidence*

It is clear from the record that the ALJ applied the correct legal standards, performing the five-step analysis and giving the appropriate weight to the opinions and reports of the various medical professionals. As plaintiff does not offer any explanation or support for her assertion that the ALJ's decision is contrary to law, we proceed with the analysis of whether his decision is supported by substantial evidence. Plaintiff challenges the ALJ's determination that she was not disabled under the Act because she could perform sedentary work within 12 months from the date of her disability.

■ The ALJ correctly noted that the most significant weight should be given to the medical opinions of treating sources, and found that Dr. Taddonio had the greatest familiarity with plaintiff's condition. *See* (Tr. 17); *Mikol v. Barnhart,* 494 F.Supp.2d 211, 223 (S.D.N.Y.2007) (Conner, J.) ("The opinion of the treating physician must control when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence. [The court is also required to give greater weight to a treating physician's opinion] than that of a non-treating physician, especially where the examination by a non-treating physician is for the purposes of the disability proceeding itself.") (internal quotation marks and citation omitted.). He found that Dr. Taddonio's observations indicated plaintiff gradually improved from her July 2002 surgery to January 2003, where she had a negative straight leg test and no specific limitations on physical functioning. (Tr. 17.) He determined that Dr. Taddonio's finding that plaintiff was temporarily disabled from return to her work did not preclude her from performing all work activity. Additionally, this statement was submitted on a report for Workers' Compensation purposes.[3] He also found that it appeared there was a "very significant improvement" in plaintiff's condition between January 2003 and

---

2. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

3. *See Rosado v. Shalala,* 868 F.Supp. 471, 473 (E.D.N.Y.1994) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

July 2003 based on Dr. Taddonio's letter in July 2003 and the fact that he did not restrict plaintiff from sitting or from general standing/walking. (*Id.*)

█ It is not clear from the record that the treating physicians opined that plaintiff was disabled from all work activity; rather they found she was disabled for her past work as a teacher. (*See, e.g.*, Tr. 186 (January 7, 2003 letter from Dr. Taddonio stating plaintiff is "temporarily disabled from returning to her work"); *Id.* 226 (April 15, 2003 letter from Dr. Taddonio stating plaintiff "feels she cannot return to work and I would also agree at this point.").) In January 2003 Dr. Imbarrato felt that plaintiff was a candidate for rehabilitation and re-vocational training. (*Id.* 173.) Even if plaintiff's treating physicians stated she was disabled from all work, a treating physician's opinion on whether plaintiff is disabled or unable to work is not binding, and the ALJ must review underlying medical findings and other objective evidence to support such a conclusion. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) ("Moreover, some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner. That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative.") (internal quotation marks and citation omitted); *Correa v. Bowen*, 1987 WL 14459, at *7 (S.D.N.Y. July 16, 1987) ("[A] statement by a physician that a claimant is disabled or unable to work does not determine disability within the Act without a review of medical findings and other evidence that support a physician's statement that claimant is disabled.") (internal quotation marks and citation omitted). Based on the record, the ALJ gave proper consideration to the clinical findings of plaintiff's treating physicians.

The ALJ noted that in January 2003, Dr. King did not believe plaintiff could stand or walk more than one hour in an eight-hour period; however this was based in part on a finding of positive straight leg raising at 40 degrees which was directly contradicted by Dr. Taddonio's observations in January 2003. (Tr. 18.) The physician who reviewed Dr. King's analysis to determine functional capacity found that plaintiff could lift up to 10 pounds, sit for 6 hours and stand for 2 hours in an eight-hour day; this is consistent with the ability to perform sedentary work. The ALJ gave greater evidentiary weight to Dr. Taddonio's report, as confirmed by the report of the reviewing physician. He also found that the March 2003 opinion of Dr. Lansen was consistent with a finding that plaintiff was able to perform sedentary activities in that only activities involving significant exertion exacerbated her discomfort. (*Id.*)

The ALJ did note that Dr. Solab (plaintiff's chiropractor) was a trained medical source and was treating plaintiff for several years. However, the ALJ determined that Dr. Solab's finding that plaintiff's straight let raising was positive at 40 degrees directly contradicted the clinical observation of Dr. Taddonio of the same month, and Dr. Taddonio's report that month did not report any specific physical functioning limitations. (*Id.* 16.) The ALJ determined that for those reasons he could not give controlling weight to Dr. Solab's opinion on plaintiff's physical functioning limitations. (*Id.*) Additionally, the ALJ is not required to give controlling weight to the opinion of a treating chiropractor because chiropractors are not acceptable medical sources according to Social Security law. The regulations provide that "[m]edical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)." 20 C.F.R. § 404.1527(a)(2). Section 404.1513(a) lists five categories of "acceptable medical sources," but does not mention chiropractors. Instead, chiropractors are listed under "other sources," which may be used to "show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d) (1994); *see Diaz v. Shalala*, 59 F.3d 307, 313–14 (2d Cir.1995) ("Under the current regulations, the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion."); *Flors v. Massanari*, 2002 WL 100631, at *5 (S.D.N.Y. Jan. 25, 2002).

The ALJ also gave only the "slightest evidentiary weight" to the Physical Residual Functional Capacity Assessment because it was not issued by a physician or a medical source who examined the plaintiff. (Tr. 16–17.) We note that the record indicates the Assessment was performed and signed by John Stry, and there is no indication he was a physician or medical source. (*Id.* 208–13.) Therefore, the ALJ gave appropriate consideration to the Physical Residual Functional Capacity Assessment.

The clinical notes of the treating physicians show that plaintiff was improving after her surgery. In October 2002 and January 2003 straight leg raising was negative, she was able to heal and toe walk, her neurological exam was negative, and x-rays confirmed early fusion and bone growth. These notes support the Physical Residual Functional Capacity Assessment in February 2003 that plaintiff could stand/walk for at least 2 hours and sit for about 6 hours in an 8–hour day and she could occasionally lift 10 pounds. This is consistent with the definition of sedentary work. There exists substantial evidence in the record that plaintiff had the residual functional capacity to perform sedentary work before March 15, 2003.[4]

As plaintiff points out, the record also contains evidence consistent with the conclusion that she could not perform sedentary work at that time. However, because the ALJ applied the correct legal standard, and his determination is supported by substantial evidence, we are bound to uphold it. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) ("The question for our review is not whether the evidence preponderates in the Secretary's favor. Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and citation omitted).[5]

---

4. Plaintiff relies on Dr. King's statement that she should use a cane to argue that "even if she could perform sedentary work she would be disabled under Social Security Ruling 96–9p." (Pl. Mem. Supp. Mot. J. Pldgs. at 13.) The ALJ did not give controlling weight to Dr. King's finding and neither of plaintiff's treating physician's opined that plaintiff was required to use a cane. Therefore, this does not factor into plaintiff's ability to perform sedentary work. *See* SSR 96–9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to

aid in walking or standing, and describing the circumstances for which it is needed.") Even if plaintiff required a cane, there is no evidence she required it at all times, and "if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded." *Id.*

5. The court notes that Dr. Taddonio's clinical report in December 2003, after plaintiff had returned to her past relevant work, indicated that plaintiff still had pain, limited range of

The ALJ also gave due consideration to plaintiff's testimony, but did not find it was fully consistent with the medical evidence. (Tr. 18.) Although subjective complaints of pain can support a finding of disability under certain circumstances, "the applicable regulations do require 'medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain.'" *Snell,* 177 F.3d at 135 (quoting 20 C.F.R. § 404.1529(a)) (alteration in original); *see Flors,* 2002 WL 100631, at *6 ("[I]t is clear that ALJs are required to evaluate a claimant's credibility against objective medical evidence"). Where there is conflicting evidence about a claimant's pain, the ALJ must make findings as to credibility. *See id.* "When the alleged symptoms suggests [sic] greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers 'the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence.'" *Hodges v. Barnhart,* 2005 WL 1265891, at *7 (S.D.N.Y. May 25, 2005) (quoting 20 C.F.R. § 404.1529(c)(4)).

The ALJ found that plaintiff testified that her recovery after surgery was much longer than the treating medical record suggested. (Tr. 18.) She testified that she was unable to sit for any significant length of time until Thanksgiving 2002, when she sat through the Thanksgiving meal. (*Id.*) She stopped physical therapy in February 2003, which the ALJ found consistent with her testimony that she was given only some restrictions by her physician at that time. (*Id.*) He noted that those restrictions correspond to the same restrictions given to her just prior to returning to work in September 2003, and

she has been able to successfully perform her work activities with those restrictions. (*Id.*) Additionally, she testified that she only required pain medication about "once a week," which he found inconsistent with her testimony of unrelenting pain and discomfort. (*Id.* 18–19.) His opinion was that she exaggerated the extent of her symptoms in her testimony, that her subjective complaints were not fully corroborated by objective medical evidence, thereby adversely impacting his evaluation of her reliability. (*Id.* 19.) He also found that the medical signs and findings suggested that the "intensity, persistence and functionally limiting effects of her symptoms did not preclude her ability to perform basic work-related activities beyond November 2002—which is within the 12–month period since her alleged onset date." (*Id.*)

Substantial evidence supports the ALJ's determination on plaintiff's credibility. Dr. Taddonio repeatedly reported no negative neurological examinations, no motor weakness and negative straight leg raising tests. Dr. Lansen reported plaintiff had good strength. Diagnostic studies confirmed fusion and bone growth in the area. The record also reflects plaintiff's statements regarding her improvement. She felt she was getting better when she visited Dr. Taddonio in October 2002, she was weaning off her pain medication and no longer wearing her brace around the house. By Thanksgiving 2002 she was able to drive herself and in the summer of 2003 she could go to the grocery store and the movies. The ALJ had the discretion to evaluate plaintiff's credibility in light of the evidence in the record. Since that evaluation is supported by substantial evidence the Court must accept it, for it is the function of the ALJ to appraise the credi-

---

motion and difficulty heel walking, but negative straight leg raising. These findings are similar to the clinical reports of Drs. Taddonio and Lansen throughout the record.

bility of the plaintiff. *See Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir.1984) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant. If the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.") (internal quotation marks and citations omitted; alterations in original).

 Once the ALJ determined that plaintiff had ·the capacity for sedentary work prior to March 15, 2003, he appropriately applied the Guidelines to determine she could engage in substantial gainful work existing in the national economy. "The grids 'take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.' Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Rosa,* 168 F.3d at 78 (quoting *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y.1996)). "Generally, when the grid analysis adequately describes a particular claimant's profile, grid determinations are dispositive on the issue of disability." *Flors,* 2002 WL 100631, at *2; *see Heckler v. Campbell,* 461 U.S. 458, 470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Finally, because we find that there is substantial evidence to support the ALJ's determination that plaintiff was not disabled and therefore not entitled to disability insurance benefits, plaintiff was not entitled to a trial work period when she returned to teaching on September 2, 2003. *See* 20 C.F.R. 404.1592(d)(1) ("You are generally entitled to a trial work period if you are entitled to disability insurance benefits....").

## CONCLUSION

For all the foregoing reasons, the Court grants defendant's cross-motion for judgment on the pleadings and denies plaintiff's motion. The Commissioner's determination is affirmed. Judgment to be entered by the Clerk of the Court.

SO ORDERED.